[Civ. No. 2984.   Third Appellate District.—February 18, 1926.]

## JACOB MICHAELIAN, Respondent, v. ELBA LAND COMPANY (a Corporation), Appellant.

[1] EJECTMENT — POSSESSION — PLEADING — EVIDENCE. — In actions in ejectment, it must be alleged and proved that the plaintiff is entitled to the possession of the premises from which he alleges he has been wrongfully disseized at the time the action is commenced.

[2] VENDOR AND VENDEE—RESCISSION—PLEADING.—In an action for damages for the alleged breach by the vendor of a contract for the sale to plaintiff of a certain tract of land, where what plaintiff asks for in his complaint, although in the form of damages, is a return to him of the moneys he paid on the purchase price and otherwise expended by him in the care and improvement of the property while the same was in his possession and prior to the time defendant retook possession, he is proceeding upon the theory of rescission of the contract by defendant and acquiescence therein by him.

[3] ID.—RESCISSION—POSSESSION—RESTORATION OF MONEYS.—Where said plaintiff makes wrongful rescission by defendant the basis of his cause of action, he cannot consistently claim possession of the property and at the same time claim the right to the restoration to him of all money he paid on the purchase price thereof and otherwise expended by him in performing its terms.

[4] ID. — DEFECTIVE COMPLAINT — SUBSEQUENT PLEADINGS — ISSUES — TRIAL.—Conceding that, to state a cause of action for the relief sought by him, it is necessary for said plaintiff to allege that he was entitled to and that the defendant, at the time of the commencement of his action, still wrongfully withheld from him, possession of the property, his failure to so allege will not constitute reversible error, where said defect in the complaint is

---

1. See 9 Cal. Jur. 980; 9 R. C. L. 853.
3. See 25 Cal. Jur. 696.

cured by the cross-complaint of defendant and plaintiff's answer thereto, and the case goes to trial upon the issues thus raised.

[5] ID.—DELAY IN CULTIVATION—TERMINATION OF CONTRACT.—The fact that plaintiff was late in his cultivation and pruning in the spring of a given year did not warrant defendant in terminating the contract where plaintiff had pruned late each of the preceding years, and defendant, after retaking possession, completed the pruning in March, and it was not shown that the vines or trees were injured or that the crops of said given year were any less because of the late time of pruning or cultivation, or at all.

[6] ID.—FORFEITURES—CONSTRUCTION.—Forfeitures are not favored in law, and conditions providing for the forfeiture of an estate must be strictly interpreted against the party for whose benefit they are created and be construed liberally in favor of the holder of the estate.

[7] ID.—UNAUTHORIZED TERMINATION OF CONTRACT—MEASURE OF RECOVERY.—Where defendant was not entitled to terminate the contract except for plaintiff's acquiescence, plaintiff was entitled to recover the amount of his payments on the purchase price, plus the reasonable expenses incurred for leveling the land, pumping plant, grape stakes, building ditch, lowering and cementing well, etc., all of which added value to the property, less the rental value of the land while plaintiff was in possession.

[8] ID.—RESCISSION—ACQUIESCENCE.—The act of defendant in taking possession of the premises and declaring the contract terminated before suit was commenced constituted a rescission of the contract on its part, and thereafter plaintiff by bringing suit for damages acquiesced in the rescission, although rescission on defendant's part was without right.

[9] ID. — CONTINUED OCCUPANCY OF SLEEPING-ROOM — POSSESSION OF PREMISES.—The fact that plaintiff for a brief time after his eviction from the premises by defendant occupied a sleeping-room in the house on the premises was purely an evidentiary circumstance, but its force as such was destroyed by the decision of the trial court, founded upon evidence, including the admission of defendant, that the latter terminated the contract and took actual possession of the premises and from that time on exercised complete control of and dominion over the property as against the plaintiff, who made no pretense of actual or any possession of the premises after the defendant assumed control thereof.

[10] ID.—WRONGFUL DISSEIZIN—REMEDIES OF VENDEE.—Plaintiff, not having been in default at the time defendant retook possession of

---

6.  See 25 Cal. Jur. 610.
7.  See 25 Cal. Jur. 815; 27 R. C. L. 631.
10.  See 6 Cal. Jur. 464.

the premises, was at liberty to base his action on the contract and sue for damages' for its breach by defendant, or he could treat the contract as terminated or rescinded and sue for the recovery of the money that he had paid or expended thereunder, for the reasonable value of services performed in pursuance of the requirements of the contract and for any special damage to which he may have been subjected by the defendant's wrong in dispossessing him, or he could have sued in equity for the specific performance of the contract and such compensatory relief by way of damages for any damage the wrongful disseizin and the like detention of the premises had entailed upon him.

(1) 19 **C. J.**, p. 1112, n. 36, 37, p. 1153, n. 16.    (2) 39 **Cyc.**, p. 1437, n. 34 New.    (3) 20 **C. J.**, p. 5, n. 34, p. 6, n. 50, 51; 39 **Cyc.**, p. 1424, n. 44, p. 2000, n. 22, p. 2001, n. 23.    (4) 4 **C. J.**, p. 927, n. 42; 19 **C. J.**, p. 1115, n. 93; 38 **Cyc.**, p. 714, n. 55, p. 715, n. 57, p. 720, n. 79, p. 730, n. 62.    (5) 39 **Cyc.**, p. 1405, n. 88. (6) 39 **Cyc.**, p. 1346, n. 29, 30.    (7) 39 **Cyc.**, p. 2070, n. 17, p. 2072, n. 28, p. 2073, n. 43, 45.    (8) 39 **Cyc.**, p. 1388, n. 25, p. 1431, n. 89. (9) 39 **Cyc.**, p. 1388, n. 25.    (10) 39 **Cyc.**, p. 1440, n. 59, 60, p. 1997, n. 94, 95, 98, p. 2105, n. 4.

APPEAL from a judgment of the Superior Court of Tulare County.  J. A. Allen, Judge.  Affirmed.

The facts are stated in the opinion of the court.

Farnsworth, McClure & Burke  and Frank J. Golden for Appellant.

D. M. Edwards, J. W. Wright and J. C. Thomas for Respondent.

HART, J.—The plaintiff brought this action to recover the total sum of $78,978.24 for the alleged breach by the defendant of a contract for the sale to him (plaintiff) of a certain tract of land, situated in Tulare County, together with certain personal property.  The cause was tried by the court, a trial by jury having been waived by the parties, and plaintiff was awarded judgment in the sum of $31,098.31, together with interest thereon at the rate of seven per cent per annum from the date of said judgment.

The defendant appeals from said judgment upon a record made up in pursuance of the provisions of section 953a of the Code of Civil Procedure.

The contract, for the alleged breach of the terms of which by defendant the plaintiff herein seeks relief, was entered into between the parties on the twenty-fourth day of June, 1918. The land involved in the agreement of sale is specifically described in said agreement, and growing thereon, at the time said agreement was executed, were fruit trees and a vineyard. Certain portions thereof were devoted to the growing of wheat and other like crops. There were also fuel trees upon the premises. The articles of personal property involved in the sale consisted of certain shares of stock in certain canal companies, and pumping plants, horses, mules, harness and wagons, plows, harrows, cultivators, and a variety of other mechanical equipments suitable and necessary to the cultivation and care of fruit trees and grapevines. All these articles are specifically enumerated and described in the agreement of sale.

The purchase price of the land and said personal property was $85,000, payable as follows: "Two thousand dollars, cash in hand, receipt whereof is hereby acknowledged; $5,000.00 payable on July 1st, 1919; $8,000.00 on July 23, 1919, and $10,000.00 on December 15, 1919." It was further provided that crops harvested after 1919 were to be marketed "in the name of the first and second parties jointly, at best market price, one-half of the returns from such sales to be paid to said party of the first part (defendant) until the amount received by him, together with payments made during the year 1919, shall equal one-half the purchase price to be paid for the above described property, together with interest at the rate of six per cent per annum on all deferred payments payable annually." The contract further provided: That second party (plaintiff) shall "have the immediate possession of said premises and personal property," but that title thereto or to the crops harvested shall not pass to second party, "except as hereinafter provided"; that second party shall pay all expenses for caring for said property after June 23, 1919, and that he (second party) "shall pay all taxes and amounts levied on said land or ditch stock for the year 1919, or that may hereafter be levied." The second party further agreed: "To properly care for all the crops growing on said land, and will hereafter properly care for all vines and trees on said land, and in due and proper season prune the same, properly plow, cultivate and

irrigate the lands on which the same are growing, in proper
season sulphur and spray such trees and vines as may require
the same, and in due and proper season harvest the crops
thereon, and keep all squirrels poisoned on said land; that
he will plant at least 30 acres additional to vines or trees
or both, each year for the ensuing three years, and properly
care for the same.'' Said agreement further provided that
whenever one-half of the purchase price and the interest
have been paid on said property, ''then the balance of said
purchase price shall be evidenced by one or more promissory
notes for such balance, bearing interest at the rate of 6½
per cent per annum, payable annually, and provided that
$10,000.00 of such principal shall be paid each year for
three years after the date of said note, and the balance of
said principal to be paid the fourth year.'' Upon the pay-
ment of one-half of the purchase price within three years
from December 1, 1919, ''then,'' so the agreement provided,
''a deed to said land shall be executed by said party of the
first part to the second party, conveying to him the title'' to
said land, the second party to execute to the first party a
mortgage on said land for the balance of the purchase price.
The forfeiture clause of the agreement reads: ''Upon failure
to make any payment of purchase price, or interest, as herein
specified, or to do and perform each and every of the
covenants and conditions herein agreed to be done, and per-
formed by the said party of the second part, then all rights
of said party of the second part hereunder shall cease, and
this agreement shall become null and void, and all payments
theretofore made shall belong to said party of the first part
as the consideration for this agreement.''

The complaint, which was filed on March 12, 1923, pleads
the contract in its entirety, and charges that, on the fifth
day of March, 1923, the defendant ousted plaintiff from the
possession of the premises, that it ''put 20 men on said prem-
ises,'' and while plaintiff was absent therefrom ''did cause
the gate to be locked which closed the said premises and did
thus forcibly eject plaintiff'' therefrom; that, until so ousted,
plaintiff performed each and every of the covenants and
conditions of the contract of sale, above referred to. It is
alleged that, after taking possession of said premises under
said contract, plaintiff improved the property and took
proper care thereof, and in doing so expended large sums

of money; that he had actual possession of the property for a period of forty-two months immediately preceding the date of his wrongful ejection therefrom by defendant, and during all that time gave personal attention and care to the improvement of the premises and the cultivation and development of the orchard, vineyard, and other crops produced upon said property. The total sum for which he sues for the alleged breach of the agreement by defendant, to wit, the sum of $78,978.24, which includes interest thereon, is made up of various items of expenditure and payments made on the purchase price, all of which are specified in detail in the complaint.

A general demurrer to the complaint was overruled, and the defendant filed an answer and a cross-complaint. The answer admits the making of the contract as set forth in the complaint, but specifically denies all the other material averments thereof.

In its cross-complaint defendant alleged that plaintiff, after entering upon and into the possession of the premises, failed and neglected to give the required care and attention to the fruit trees and vines then growing on the land, and otherwise violated the terms, covenants, and conditions of the contract, specifically charging that five acres which were planted to "prunes and interset with part Malaga and Thompson grape vines," and said prunes and grape vines died because of plaintiff's failure to cultivate and irrigate the same; that a great portion of the prune orchard growing on said premises when plaintiff took possession thereof in pursuance of said contract of sale plaintiff failed and neglected to cultivate, spray, prune, and irrigate, with the result that "said prune trees died and became valueless"; that "ninety acres of said land under said agreement were to be planted to vineyard, and the same were so planted, but on account of plaintiff's neglect to care for the same a great portion thereof died, so that there is now less than a fifty per cent stand of vines; that, under said agreement, said plaintiff took possession of all the personal property described therein, and thereafter removed and took for his own use from said premises one revolving harrow, one 2-horse cultivator, one six foot disc, one two-horse scraper, two 2-horse plows, also about thirty tons of raisins, all of which was the property of this defendant." It is likewise alleged

that plaintiff "has each year of his possession of the premises failed, neglected and refused to properly plow, cultivate and irrigate the lands on which the orchards and vineyards were growing, and by reason thereof the security of defendant for the amount due has deteriorated and is now insufficient to pay plaintiff the balance due it under said contract"; that plaintiff has repeatedly been requested by the defendant that he (plaintiff) "care for the orchards and vineyards growing upon said premises," but that he has refused to comply with said requests "and abandoned said orchards and said vineyards; that defendant has performed each and all the covenants and conditions required of it to be done and performed under and pursuant to the terms of said agreement." It is further alleged: "That under and pursuant to the terms of said agreement, the said plaintiff, Jacob Michaelian, on or about the 24th day of June, 1919, entered into the possession of all of said real and personal property, and is now in the possession thereof." The fifth paragraph of the cross-complaint alleges:

"That pursuant to said agreement, said defendant did on the 1st day of March, 1923, exercise said right and option to terminate said agreement, and did *at the time terminate the same,* and does hereby exercise said right and option to terminate said agreement, and does hereby terminate said agreement and declare the same null and void, and said plaintiff did on the 1st day of March, 1923, and at all times since has refused to deliver possession of said real and personal property to defendant."

The agreement of sale was annexed to and expressly made a part of the cross-complaint.

The answer of plaintiff to the cross-complaint denies specifically the allegations of the latter pleading to the effect that plaintiff in a number of specified particulars had failed to carry out the agreement on his part, but affirmatively alleges that he performed all the terms of the contract required of him thereby in the manner and at the times specified in said agreement. The charge in the cross-complaint that plaintiff removed from the premises and appropriated to his personal uses other than those mentioned in the contract certain farming implements, and the further charge that he removed from the premises thirty tons of raisins against the consent of defendant and disposed of the same

contrary to the terms of the contract are denied and explained. That he abandoned the orchards and the premises, as charged in the cross-complaint, is also denied by plaintiff. There are many others of the averments of the cross-complaint specifically denied by plaintiff's answer thereto, and many affirmative allegations in said answer specifically describing and explaining the manner in which plaintiff performed the terms of the agreement and the obligations cast upon him thereby. These need not be specially recited herein, since they involve only a repetition of the averments of the complaint, but with greater detail. Said answer also admits that defendant and cross-complainant, as set forth in his cross-complaint, took charge of the premises on the first day of March, 1923, and thus ousted plaintiff of the possession of the land, all of which, plaintiff alleges in his answer, was contrary to and in violation of plaintiff's rights under the said agreement of sale and constituted a breach thereof by defendant. It is alleged in said answer that, by reason of the act of the defendant in so taking charge and possession of the premises, plaintiff was damaged in the sum of $78,978.24, for which he in said answer prays judgment as for damages.

It is not necessary to present a *résumé* of the court's findings. It is sufficient to say that they are specific, and in detail embrace conclusions favorable to plaintiff upon all the vital issues of fact made by the pleadings and brought out through the evidence.

The point first brought to our attention by the appellant is that the complaint failed to state a cause of action upon the essential theory thereof and that the order overruling the general demurrer thereto involved prejudicial error. The specific contention is that, as the plaintiff's action, as made by his complaint, is one in ejectment, it was necessary, to state such a cause of action, for him to allege, in addition to the allegation that defendant wrongfully ejected or ousted him from the possession of the premises described in the complaint, that he (plaintiff) was entitled to the possession of said property at the time of the commencement of his action, and that, having failed so to state, his complaint is bad for want of facts. The theory upon which plaintiff's action proceeds, or undoubtedly the plaintiff thereby intended so to proceed, was that defendant, by retaking possession of the prem-

ises had wrongfully rescinded the contract of sale. The effect of his action, as framed by his complaint, would be, if sustained, acquiescence in the act of rescission of the contract by defendant. It is true that it is alleged in the complaint that the act by defendant in terminating the contract was in the fact of its retaking possession of the premises and consequently ousting plaintiff therefrom.    [1]    It is also true that, in actions in ejectment, it must be alleged and proved that the plaintiff is entitled to the possession of the premises from which he alleges he has been wrongfully disseized at the time the action is commenced.    But the plaintiff was not seeking to regain possession.    [2]    What he asked for in his complaint, although in the form of damages, is a return to him of the moneys he paid on the purchase price and otherwise expended by him in the care and improvement of the property while the same was in his possession.    Necessarily by the relief thus asked he proceeded upon the theory of rescission of the contract by defendant and acquiescence therein by him.    [3]    At any rate, he thus, from the very nature of the relief sought by him, of necessity made wrongful rescission by defendant the basis of his cause of action, and, manifestly, he could not, under such circumstances, consistently claim possession of the property and at the same time claim, as he does claim, the right to the restoration to him of all the money he paid on the purchase price thereof and otherwise expended by him in performing its terms. [4]    But, if we were required to concede that, to state a cause of action for the relief sought by him, it was, nevertheless, necessary for him to have alleged that he was entitled to and that the defendant, at the time of the commencement of his action, still wrongfully withheld from him, possession of the property, the defect of his complaint in that regard was cured by the defendant's cross-complaint. Therein, as seen, the defendant alleged and thus admitted that, on or about the first day of March, 1923, it elected to exercise its right under the contract to terminate said contract and that it then did terminate it for the alleged reason that plaintiff had not performed the terms and conditions thereof.    And the plaintiff's admission in his answer to the cross-complaint that defendant, on the date mentioned, terminated the contract, rendered the alleged defect in the complaint in the particular mentioned immaterial or wholly

without importance. There was then no longer an issue upon that question. In other words, the situation thus presented involved a statement by the defendant that it had terminated and so rescinded the contract and an admission by plaintiff of that fact and his acquiescence in said act of rescission, thus leaving for determination only, so far as that fact was concerned, the question whether the defendant was justified in declaring and treating the contract as rescinded. The case went to trial upon the cross-complaint and the answer thereto, and, as was said in *Cohen* v. *Knox*, 90 Cal. 266, 275 [13 L. R. A. 711, 27 Pac. 215], "it would be a vain thing to reverse the judgment and allow plaintiff to amend his complaint by averring facts already averred in the cross-complaint, and to again, in that form, present issues which have already been raised and determined."

The point that the court's findings are devoid of sufficient support is not well founded. The learned trial judge prepared and filed herein a written opinion in which he reviewed the evidence and stated some of the principles of law pertinent to certain of the questions involved in this controversy, and the same is, in part, reproduced in respondent's brief. The conclusions announced in said opinion upon the facts are in line with the court's findings. We have carefully read the voluminous transcript of the testimony, and thus have been convinced that the conclusions announced in said opinion as to the effect of the evidence touching the several questions of fact arising in the case are fully warranted and clearly confirm the conclusion that the court's decision as crystallized in its findings is abundantly supported by the evidence. We shall, therefore, adopt into this opinion as a part hereof certain portions of the opinion of the trial judge, being also satisfied with the statement therein of certain legal principles applicable to the case as made by the pleadings and proof. It will be noted that payments in installments required by the contract to be made by plaintiff in the year 1919, in which year the contract was executed by the parties, aggregated the sum of $25,000. It was and is not questioned that that sum was paid by plaintiff to defendant according to the exactions of the agreement. In addition to that sum, proceeds the court's opinion, "the evidence showed that the plaintiff had accounted to defendant for the returns from all crops raised, harvested and sold up to March 1st, 1923,

and had paid to defendant the one-half of said returns, thereby paying to defendant in all, including said $25,000.00, the sum of upwards of $42,000.00. After the commencement of this action, plaintiff paid defendant a further sum of upwards $500.00, which sum was one-half the proceeds of the sale of raisins which were being dried in a dryer at the time of the commencement of this action. In all, of principal and interest, plaintiff had then paid defendant the sum of $42,703.19. He had made all of the payments required to June 24, 1923, under the contract, both of principal and interest.

"The foregoing disposes of defendant's denials as to payments.

"It should be noted that defendant in his cross-complaint does not claim that plaintiff had failed to make the payments required by the contract.

"By the cross-complaint defendant specifically alleges wherein he claims plaintiff failed to perform the contract. In effect the allegations are that he failed to care for, irrigate, prune, spray or cultivate the peach orchards; that he neglected to cultivate and irrigate five acres of an old prune orchard, interset with Malaga and Thompson grape vines; that he failed to cultivate, spray, prune and irrigate another prune orchard; that he planted 90 acres to vineyard as required by the contract, but that plaintiff failed to care for them by reason of which a great portion died, leaving less than 50 per cent stand of vines; that he removed from the ranch certain farming implements, and 30 tons of raisins, all being the property of defendant.

"It must be here said that all raisins and crops produced were accounted for by plaintiff, defendant recovering his full share of the proceeds thereof. Defendant alleges that the lack of care stated caused the peach trees, the five acres of prunes and vines planted to die and become valueless; that for the same reason a great portion of the other prune orchard died and became valueless.

"On February 28, 1923, defendant placed a crew of men upon the ranch to prune orchards and vineyards. At the trial he claimed that this was done with the consent of the plaintiff, the latter to pay for the work. But it is evident that on March 1, 1923, defendant determined to then cancel the contract and to hold possession of the ranch. That is

shown by the allegations of his verified cross-complaint and by the evidence in the case. He excluded plaintiff from any part in the care of said premises, locked the gate to keep him out of the property, used the house and other buildings for his own purposes. For a short time after said March 1st, plaintiff at intervals occupied a room in the house at night, but soon found that he was not to be permitted to carry out his contract and left the premises. He commenced this action on March 12, 1923; the answer and cross-complaint were filed April 16, 1923.

"Defendant's right in taking possession of the premises and terminating the contract depended on his establishing the allegations of the cross-complaint. He produced many witnesses who testified that the orchards and vineyards had been neglected in the plowing, pruning, and irrigating; some witnesses who testified that the 90 acres of vines were not properly planted or irrigated. Plaintiff claimed that a large part of the vines planted by him died because of alkali; that some prune trees died of old age; that many fruit trees died because of alkali; some being killed by squirrels. The evidence was very conflicting as to the presence of alkali. Some witnesses for defendant visited and inspected the land, and they testified that there was not sufficient alkali, except in small spots, to prevent the growing of vines or fruit trees. Many of those witnesses were worthy of credit, but their evidence was based on their inspection of the land, and not on any experience in farming the same.

"On the other hand, plaintiff produced several witnesses who resided and had resided for many years on lands adjoining or in close proximity to the land in question. They had noted the farming of the land from year to year. They invariably testified that large portions of the land were so impregnated with alkali that its farming had been unsuccessful; that it would not produce and trees and vines died or did not grow. The soil in the two fig orchards is almost wholly alkali; there is a large acreage of alkali soil where the 90 acres of vines were planted. On the alkali the figs are missing; they died or did not grow. On the good land there is a fair stand of growing, thrifty vines. There is evidence that apricots did not grow because of alkali, also the same as to prunes.

"The land where the alfalfa was planted by plaintiff's predecessors was evidently not properly leveled before planting, leaving portions of it difficult, in some places impossible of irrigation. Plaintiff testified that much of the alfalfa was dead when he took possession, and that he had intended to plow up the remainder as unprofitable, and properly prepare the land for farming.

"I must conclude that plaintiff during his possession of the premises, took good care of the same. While in places young trees and vines died in good soil, still it does not appear that it was from lack of care. Plaintiff gave the premises the care that the ordinary careful farmer does of like premises and defendant had no substantial cause for complaint.

"In addition to paying defendant $42,703.19, principal and interest as above stated, plaintiff expended in improvements placed on said land and in caring for the orchards and vineyards at least $40,000.00, a large part being expended in the care, cultivation and irrigation of the land. That constitutes additional evidence that plaintiff gave good care of the property.

"The evidence failed to show that plaintiff had removed any tools or farming implements belonging to defendant.

"Plaintiff probably did not always do the best kind of farming or give the orchards and vineyards the very best of care, but the evidence showed that he did all the work in the ordinary manner and time of the farmers in his neighborhood. No complaint was made by defendant concerning lack of care until just prior to his taking possession of the land. Meantime it continued to receive payments on the purchase price. Plaintiff had occupied the place nearly four years and during that time the proceeds from crops had continually increased, those of 1922 being nearly double those of 1919, and the crops were from the orchards and vineyards on the place, when plaintiff took possession. In some respects he went beyond what was required by the contract. For instance, the contract provided that he should plant 30 acres to fruit each year for three years. He leveled and planted 90 acres the first year and planted quite a large additional acreage during his possession. [5] The fact, if true, that he was late in his cultivation and pruning in the Spring of 1923, did not warrant defendant in terminating the contract. He had pruned late each year. Defendant

completed the pruning in March, and it was not shown by the evidence that the vines or trees were injured or that the crops of 1923 were any less because of the late time of pruning or cultivation, or at all. **[6]** Section 1442 of the Civil Code provides 'A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created.'

" 'Forfeitures are not favored in law, and conditions providing for the forfeitures of an estate are to be construed liberally in favor of the holder of the estate, and strictly against the enforcement of the forfeiture.' (*Behlow* v. *Southern Pac. Co.,* 130 Cal. 19 [62 Pac. 295]; *Hailey* v. *Vaughn,* 11 Cal. 237; *Bandol* v. *Scott,* 110 Cal. 590 [42 Pac. 976]; *Knarston* v. *Manhattan L. Ins. Co.,* 124 Cal. 74 [56 Pac. 773].)

**[7]** "It must be held that defendant was not entitled to terminate it except for plaintiff's acquiescence, as hereinafter stated. Plaintiff is entitled to recover, as follows:

| | |
|---|---:|
| Payment on the contract (purchase price) the sum of | $42,703.19 |
| For leveling land | 6,300.00 |
| For pumping plant | 1,000.00 |
| For grape stakes | 820.00 |
| For building ditch | 400.00 |
| For lowering and cementing well | 170.00 |
| For electric line to pumping plant | 512.00 |
| For dry-house | 61.50 |
| For material for building | 54.55 |
| For digging well | 167.45 |
| | $52,189.69 |
| He should be allowed interest on the $25,000.00 paid in 1919, which his counsel calculated in their brief at 6 per cent, being | 4,875.00 |
| Making | $57,064.69 |
| From that sum should be deducted as for the stipulated rental value of the land while plaintiff was in possession | 25,965.88 |
| Leaving plaintiff | $31,098.81 |

" . . . The amounts allowed for leveling land, pumping plant, grape stakes, building ditch, lowering and cementing well, the electric line, dry-house building material, etc., are allowed because of the evidence that such expenses incurred were reasonable and they must therefore have added as value to the property the amount expended.

" . . . There is a large acreage of planted vines, planted and cared for by plaintiff, growing on the property, also of fruit trees. They no doubt added value to the property. . . . "

There was an attempt on the part of defendant to show that there was in 1922 and continuing to and through 1923 a decline in the market prices of grapes and deciduous fruits, and that it was for that reason that plaintiff had ceased giving the orchards and vineyards the care required by the contract and which was necessary to the profitable cultivation of the fruit and grapes, the inference sought to be educed from that fact being that plaintiff was thus endeavoring to free himself from the obligations of the contract and at the same time secure a return to him of the moneys paid by him on the purchase price and otherwise expended in developing the property. The evidence showed that the very best and most profitable crop that had been grown on the premises while plaintiff was in charge thereof was gathered in the year 1922, a fact which tended to negative the theory or claim of defendant that plaintiff failed in 1922 or at any time to carry out the requirements of the contract as to the care and attention requisite to the successful prosecution of the fruit and grape-growing business on the premises. The trial court found and the trial judge stated in his opinion that plaintiff neither purposely nor negligently failed to perform the contract as to the care which was to be given to the trees and vines, etc., and also stated what obviously was true that the plaintiff was not responsible for any decrease in the value of the property; that a decline in the value of grapes and deciduous fruits prevailed at the time referred to throughout the entire state. The opinion of the trial judge proceeds:

[8] "Defendant declared the contract terminated and filed cross-complaint in the action asking that it be adjudged terminated, etc. He had taken possession of the premises and declared the contract terminated before suit was com-

menced. His actions constituted a rescission of the contract on his part, and thereafter plaintiff by bringing the suit for damages acquiesced in the rescission, although rescission on defendant's part was without right.

"Judgment is awarded that plaintiff recover from defendant as damages the sum of $31,098.81 and costs, and that the contract be and is terminated by the acquiescence of the parties. (*Merrill* v. *Merrill,* 103 Cal. 287 [35 Pac. 768, 37 Pac. 392]; *Glock* v. *Howard,* 123 Cal. 15 [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713]; *Helling* v. *Parlin,* 134 Cal. 99 [66 Pac. 186].)"

It may be added to what is stated in the foregoing opinion of the trial judge that plaintiff testified that, when he took possession of the premises under the contract, he was told by the defendant's president, Frank Giannini, who was an experienced orchardist and vineyardist in the vicinity of the land in question here, that the proper time to spray fruit was in the month of March of each year; that he had always done that work in that month, and that just prior to the receipt by him of a written notice, dated February 27, 1923, and signed by defendant, by its secretary, notifying him that he had failed to attend to the trees and the vines as required by the contract and as was necessary for maintaining the thriftiness of the trees and vines, he was endeavoring to employ the necessary help for spraying the trees and vines in the month of March, 1923.

It is also well to note that the witness Liggett, who resided and had resided in the neighborhood of the premises described in the complaint and cross-complaint for many years, and was familiar therewith, and who for a time in the year 1922 was employed on said premises as a laborer by plaintiff, testified that, on retaking possession of the premises for defendant, said Frank Giannini employed him (witness), with others, to work on the place; that Giannini locked the gate by means of chains and locks, and instructed witness to keep the gate locked; that Giannini explained that the reason he desired that the gate should be kept locked was to prevent six or seven head of horses and mules then on the premises from escaping from and leaving the ranch. The witness testified that never before, so far as he knew (and he said he had been on the premises frequently), was the gate locked, although generally it was closed. The latter

part of the witness' testimony, as well as that of others, and also the admission of Giannini, plainly enough showed that there was no necessity for locking the gate for the reason stated by Giannini, and the inference therefrom which the trial court could reasonably have drawn, and which doubtless it did draw, was that the locking of the gate was only the assertion of the repudiation of the contract by defendant and the consequent intention to exclude the plaintiff from further possession of the premises.

[9]   The fact that plaintiff for a brief time after his eviction from the premises by defendant occupied a sleeping-room in the house on the premises was purely an evidentiary circumstance, but its force as such was destroyed by the decision of the trial court, founded upon sufficient evidence, including the admission of defendant, that the latter terminated the contract and took actual possession of the premises and from that time on exercised complete control of and dominion over the property as against the plaintiff, who made no pretense of actual or any possession of the premises after the defendant assumed control thereof.

[10]   Lastly, it is not improper to suggest that the plaintiff had his election of one of several remedies for relief against the act of defendant in dispossessing him, viz.: 1. He was at liberty to base his action on the contract and sue for damages for its breach by defendant; 2. He could treat the contract as terminated or rescinded, and sue for the recovery of the money that he had paid or expended thereunder, for the reasonable value of services performed in pursuance of the requirements of the contract and for any special damage to which he may have been subjected by the vendor's wrong in dispossessing him; 3. He could have sued in equity for the specific performance of the contract and such compensatory relief by way of damages for any damage the wrongful disseizin and the like detention of the premises had entailed upon him. (*Hines* v. *Brode,* 168 Cal. 507, 511, 512 [143 Pac. 729]; *Gray* v. *Bekins,* 186 Cal. 389, 400 [199 Pac. 767]; 6 Cal. Jur., p. 464, sec. 276.)

As before suggested, the plaintiff had the right to treat the defendant's act in retaking possession of the property as an act of rescission, to acquiesce therein, and to ask to be placed as near *in statu quo* as the circumstances and equities of the case would justify.   Thus he proceeded and thus the

trial court by its decree seems equitably to have adjusted and settled the controversy.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 19, 1926.