[Civ. No. 18904.   First Dist., Div. Two.   Dec. 19, 1960.]

FRANK D. SIXTA, Plaintiff, v. HILDA C. OCHSNER, Defendant and Appellant; CELIA S. PARSONS, Cross-defendant and Appellant.

George Porter Tobin for Defendant and Appellant.

Rea, Frasse, Anastasi, Clark & Chapman and John J. Hayes, Jr., for Cross-defendant and Appellant.

McGOLDRICK, J. pro tem.*—This action involves a complaint by one Frank D. Sixta for rescission of a contract for the purchase of certain real and personal property; cancella-

*Assigned by Chairman of Judicial Council.

tion of the deed, promissory note and deed of trust given pursuant thereto; restitution of plaintiff's down payment; and for consequential damages. Defendant Hilda C. Ochsner cross-complained against one Celia S. Parsons for $10,000 in damages, said cross-complaint purportedly alleging fraud, breach of contract and failure of consideration, mutual mistake, and negligent misrepresentation, all in connection with a contract between Ochsner and Parsons for the purchase of the same real property. A jury having been waived, the court found in favor of plaintiff, whereupon it ordered judgment substantially in accordance with the prayer of his complaint. The court also found for cross-complainant, and ordered judgment in the amount of $4,490. From that portion of the judgment which relates to the cross-complaint, both cross-complainant and cross-defendant now appeal.

In March of 1936 Mrs. Parsons purchased Lot 91 of the Stewart Addition No. 3 to Aldercroft Heights, and about two months later began construction of a cabin on what she assumed to be that lot. In September of 1951, she purportedly sold the cabin, completely furnished, and Lot 91, to Mrs. Ochsner. Mrs. Parsons testified that she and Mrs. Ochsner were friends, and that although she had originally asked $5,950 for the cabin and lot, the actual price which Mrs. Ochsner paid was $4,000. Following her purchase, Mrs. Ochsner undertook such improvements to the cabin as would make it suitable for her permanent residence.

In September of 1956, Mrs. Ochsner sold the aforementioned property, including furnishings, to Mr. Sixta for $8,500. Mr. Sixta and his two daughters took occupancy during the first or second week of that month, and shortly thereafter was informed by a neighbor of the possibility that there was something wrong with the location of his house in relationship to the lot lines of his property. Sixta then made an independent investigation, whereupon it was determined that the improvements aforementioned were not located on said Lot 91, the nearest portion of the cabin-house being, in fact, some eighteen feet north thereof. Sixta then notified Mrs. Ochsner of this situation, and asked for a rescission of the contract and a refund of his purchase price. Mrs. Ochsner refused, following which she contacted Mrs. Parsons to inform the latter of Sixta's complaint. Both Mrs. Ochsner and Mrs. Parsons testified that this was the first indication they had had that anything was amiss in this regard.

In its findings of fact and conclusions of law, the trial court

determined that Mrs. Ochsner was entitled to recover from Mrs. Parsons the $4,000 contract price which the former had paid to the latter, less $10 as the reasonable value of Lot 91, plus $500 in attorney's fees incurred by Mrs. Ochsner in defense of plaintiff's suit. The judgment was in conformity therewith. Mrs. Ochsner contends that the court erred in failing to include, as a part of the judgment, some $6,662.52 in improvements made by her to the cabin and surrounding premises, plus interest, both on that amount and on the original contract price. Mrs. Parsons contends that the trial court erred only insofar as it granted recovery to Mrs. Ochsner of said attorney's fees.

The cross-complaint herein alleges that cross-defendant exhibited certain real property and a dwelling thereon to cross-complainant and represented to the latter that cross-defendant was and for approximately 13 years prior thereto had been the owner of such real property; that cross-defendant offered such dwelling and the real property upon which it was situated for sale to cross-complainant for the price of $4,000; that in reliance upon these representations cross-complainant entered into a contract with cross-defendant for said purchase; that cross-complainant subsequently paid $4,000 to cross-defendant and received a deed to Lot 91 of the Stewart Addition Number 3 to Aldercroft Heights; that following the delivery of said deed to cross-complainant, she took possession of said dwelling and the real property upon which it was situated and thereafter expended a sum in excess of $13,000 in the improvement thereof; that cross-complainant subsequently and for the first time learned that said dwelling and improvements are not upon the real property described in said deed; that said representations made by cross-defendant to cross-complainant concerning the former's ownership of the dwelling and surrounding real property were and are untrue and were made for the purpose of inducing the latter to purchase said dwelling and property; that cross-complainant relied upon said representations to her damage as alleged therein; that in addition to the purchase price paid to cross-defendant plus the cost of improvements, cross-complainant sustained additional damages by way of attorney's fees incurred in her defense of plaintiff's action herein; that cross-defendant was negligent in representing to cross-complainant that said dwelling was on Lot 91; and that as a direct and proximate result of that negligence cross-complainant has sustained the damages alleged therein.

The pretrial conference order summarized the above allegations as stating a cause of action for negligent misrepresentation. These allegations were found to be true, with the single exception that the cross-complainant had expended $6,662.52 rather than $13,000 on her works of improvement. There is no contention that these findings are not supported by the evidence. While cross-defendant challenges the existence of fraud, negligent representation, intent to defraud, justifiable reliance and resulting damage, she requests that we affirm the trial court's decision, claiming that the trial court awarded damages upon the basis of a material mistake of fact, citing the case of *Levy* v. *Wolff*, 46 Cal.2d 367 [294 P.2d 945]. The findings of the trial court, however, do not support cross-defendant on this proposition.

Section 1709 of the Civil Code provides as follows: "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers. . . ."

Section 1710, subdivision 2, of the Civil Code provides: "A deceit, within the meaning of the last section, is either: . . .

"2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; . . ."

In *Hobart* v. *Hobart Estate Co.* (1945), 26 Cal.2d 412, 422 [159 P.2d 958], the Supreme Court held that in order to establish a cause of action for fraud or deceit, the plaintiff must prove that a material representation has been made; that it was false; that the defendant either knew it to be untrue or did not have sufficient knowledge to warrant a belief that it was true; that it was made with an intent to induce the plaintiff to act in reliance thereon; that the plaintiff reasonably believed it to be true; that the plaintiff did, in fact, rely thereon; and that he suffered damage thereby.

In the case of *Gagne* v. *Bertran*, 43 Cal.2d 481, 487 [275 P.2d 15], the court says: "To be actionable deceit, the representation need not be made with knowledge of actual falsity, but need only be an 'assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true' [citations]."

Cross-defendant here represented to cross-complainant that she was offering for sale the property upon which the dwelling was located. This constituted a material misrepresentation, and if relied upon, suffices to establish this element of cross-complainant's cause of action. (*Piazzini* v.

*Jessup,* 153 Cal.App.2d 58 [314 P.2d 196] ; *Richard* v. *Baker,* 141 Cal.App.2d 857 [297 P.2d 674].) Whether or not cross-defendant in fact knew the exact location of her property is immaterial; for under the law she was bound to inform herself of the true boundaries thereof before making such representation. (*Richard* v. *Baker, supra; Shearer* v. *Cooper,* 21 Cal.2d 695 [134 P.2d 764] ; *de Bairos* v. *Barlin,* 46 Cal.App. 665 [190 P. 188].) As for the element of intent, the court found that said representation was designed to induce cross-complainant to buy the property. ■ Under *Gagne* v. *Bertran, supra,* cross-complainant's justifiable reliance is established by the rule that a vendee has a right to rely on this type of representation by the vendor, even where the vendee has made an independent examination of the property, if the representation's falsity is not apparent from inspection. (*Piazzini* v. *Jessup, supra; Richard* v. *Baker, supra; Bagdasarian* v. *Gragnon,* 31 Cal.2d 744 [192 P.2d 935], *Shearer* v. *Cooper, supra.*) That she did so rely on said representation to her damage is not in dispute.

■ The main question on this appeal is whether the court below, in rendering judgment in favor of cross-complainant, applied the correct measure of damages. Cross-complainant relies on the provisions of section 3343 of the Civil Code to establish her right to recover from cross-defendant the cost of cross-complainant's improvements. That section states, in part, that ''[o]ne defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction.'' California courts have consistently used the words fraud and deceit interchangeably (*Stone* v. *Farnell,* 239 F.2d 750), and since constructive fraud under Civil Code, section 1573, subdivision 1, can be grounded on negligent misrepresentations (*Hayter* v. *Fulmor,* 92 Cal.App.2d 392 [206 P.2d 1101] ; 23 Cal.Jur.2d 68-69), it is crystal clear that this section controls the measure of damages in the instant case. The cases of *Nathanson* v. *Murphy,* 132 Cal.App.2d 363, 371 [282 P.2d 174], and *Garrett* v. *Perry,* 53 Cal.2d 178 [346 P.2d 758], both stand for the proposition that in cases of fraudulent representation by a vendor to a vendee, section 3343 of the Civil Code provides the measure of damages. The clause ''together with any additional damage arising from the particular transaction'' in section 3343 includes such items

as "actual expenditures made by the plaintiff, damage to other property, and personal injuries, provided they are the proximate result of the misrepresentation." (*Oliver* v. *Benton*, 92 Cal.App.2d 853, 855 [208 P.2d 375].)

Moreover, in the case of *Lawson* v. *Town & Country Shops, Inc.*, 159 Cal.App.2d 196 [323 P.2d 843], the court lays down the rule that damages awarded pursuant to that section [3343] in an action for fraudulent misrepresentation, include amounts for permanent improvements, operating losses, and loss of profits, and a sum for punitive damages. In fact, "[s]ection 3343 permits the recovery . . . of any . . . loss arising from the transaction," (*Williams* v. *Graham*, 83 Cal. App.2d 649, 653 [189 P.2d 324]), and this would include cross-complainant's counsel fees incurred in her defense of plaintiff's action, since she was out-of-pocket such amounts due to cross-defendant's negligent misrepresentation. (*Clar* v. *Board of Trade*, 164 Cal.App.2d 636 [331 P.2d 89].) Furthermore, since damages to which cross-complainant is entitled have been made certain by the trial court's undisputed findings, and since her right to recover became vested on a particular day, to wit: the date on which each separate amount was expended, she is entitled to interest thereon. (*Williams* v. *Graham, supra.*) The court below, therefore, erred in failing to apply the provisions of section 3343 of the Civil Code in determining the measure of damages to be awarded to cross-complainant in the instant case.

■ Finally, although not covered in the briefs, a question developed in oral argument as to the entitlement of cross-defendant Parsons to offset against cross-complainant damages for the rental value to the latter of the property upon which the dwelling is situated. It should be first noted at the outset of this discussion that the cross-complaint sought recovery for damages and not a rescission of the contract.

■ Where one elects to stand upon the contract rather than rescind, the action is at law and not in equity. (*Bagdasarian* v. *Gragnon, supra.*) ■ Our research has developed a dearth of authority on this subject. *Snarski* v. *Washington State Colonization Co.*, 53 Wash. 221 [101 P. 839], was an action by vendees for rescission of a contract of purchase of land and for damages for the improvements which they had placed thereon, the vendor having been unable to give good title. The trial court there instructed that the vendor would be entitled to have deducted from any damages the rental value of the property during the vendees' occupation, based

on the value thereof without the vendees' improvements. In reviewing a judgment for plaintiffs, and in answer to appellant's contention that this instruction was erroneous, the Supreme Court of Washington said, ''[t]he respondents here were not in possession as tenants. They came into possession under a contract of sale, and were therefore not liable for rents for the use of the premises. *Ankeny* v. *Clark,* 148 U.S. 345 [13 S.Ct. 617, 37 L.Ed. 475]. If there was error in this instruction it was in favor of the appellant, and therefore it cannot complain.'' (P. 225.)

In *Ankeny* v. *Clark, supra,* there was a contract whereby defendant was to convey to plaintiff certain tracts of land. Plaintiff, having entered into possession and delivered to defendant the wheat which constituted the purchase price, then discovered that, as to one of the tracts, defendant had no title to convey. Plaintiff thereupon elected to rescind, and sued on a *quantum meruit* for the reasonable value of said wheat. The trial court having directed a verdict for plaintiff, defendant appealed. The Supreme Court overruled appellant's assignment of error to the trial court's refusal to charge plaintiff and credit defendant with the rent of the land during the former's possession. In so doing, it said, ''[b]ut the plaintiff was not in possession as a tenant, or under any agreement that he should pay rent. Nor does the law, under the circumstances of the case, raise any obligation to pay rent. *Bardsley's Appeal* [4 Sad. (Pa.) 584], 10 At. 39, 40, is directly in point: 'It may be conceded, if one occupy the land of another by the consent of the latter, without any agreement, that assumpsit for use and occupation will lie. Such, however, is not this case. Here the possession was taken and maintained under an express contract, by which the appellant, in consideration of $8000 to be paid therefor, agreed to convey to the vendee a certain house free and clear of all incumbrances, and title to be perfect. At the date of the agreement the vendee paid $500, and was at all times ready to pay the residue of the purchase money on a deed being delivered to him according to the agreement. The vendor was not able to execute a deed according to his contract. These facts show the vendee was not in possession under such circumstances as to create the relation of landlord and tenant. There was neither an express nor an implied contract to pay rent, and no action could be maintained to recover for the use and occupation of the premises.'

''The authorities are uniform on this subject, and we content

ourselves with a reference to a few cases. [Several non-California citations.]''

In California, some 100 years ago, in the case of *Fratt* v. *Fiske & Loring* (1861), 17 Cal. 380, plaintiff had given defendants a warranty deed to certain lands in exchange for defendants' promissory notes secured by a mortgage on the land sold. Defendants failed to pay the notes and interest, and plaintiff commenced suit to foreclose the mortgage. Defendants alleged fraudulent representation as to title, and prayed that the contract of sale be rescinded, and that their notes and mortgage be cancelled. Judgment being for defendants, plaintiff appealed, one ground therefor being defendants' failure to offer to pay rents or account for profits for the time during which they held the land. In reference to this contention, the Supreme Court observed that while plaintiff was entitled to be placed *in statu quo* with regard to the portion of the land about which no misrepresentations had been made, as to the balance, ''if the fraud be established, probably a Court of Equity would hold that the plaintiff should derive no benefit from a contract thus tainted.'' (P. 385.)

Nevertheless, subsequent California cases have raised the issue with seemingly contrary results. *Shermaster* v. *California Home Bldg. etc. Co.* (1919), 40 Cal.App. 661 [181 P. 409], was an action for rescission by the vendee of real property grounded upon false representation by the vendor. The court held that plaintiff was entitled to recover the consideration which he had paid plus the value of his improvements to the property, *after* deducting therefrom the property's fair rental value. The court cited *Garvey* v. *Lashells* (1907), 151 Cal. 526 [91 P. 498], and *Gates* v. *McLean* (1886), 70 Cal. 42 [11 P. 489], in support thereof. *Michaelin* v. *Elba Land Co.* (1926), 76 Cal.App. 541 [245 P. 476], contains language of similar import.

It is to be noted, however, that in each of the above-mentioned cases, with the exception of *Bardsley's Appeal, supra,* the court is discussing a set-off for rental value in connection with a *rescission* of the contract. Thus, the California courts have, during the years which have followed the decision in *Fratt* v. *Fiske & Loring, supra,* abrogated not only the above-noted language therein contained, but the pertinent rule of the Snarski and Ankeny cases, *supra,* as well; they have done so only when acting as courts of equity. See *Smith* v. *Rickards,* 149 Cal.App.2d 648 [308 P.2d 758]; *Lobdell* v. *Miller,* 114 Cal.App.2d 328 [250 P.2d 357].)

On the contrary, in *Williams* v. *Graham, supra,* a vendee's complaint in intervention stated a cause of action for *damages* suffered by him by reason of the vendor's default, the latter having fraudulently concealed his lack of title to the real property which was the subject matter of the contract of sale. The court held that the vendee was entitled to recover, not only his deposit on the purchase price, but all other damages suffered by him by reason of the vendor's inability to convey, *including* the amount which he was required to pay as rent for alternative property on which to conduct his business. Such recovery is consistent only with the view that during the period in which, according to the terms of the contract, said vendee had been entitled to occupancy of the premises in question, he was entitled to that occupancy on a rent-free basis. It would indeed be difficult, in the instant case, to justify a setoff for the rental value of the property for which Mrs. Ochsner bargained, and which she in fact occupied, in face of the intervener's recovery in the Williams case, *supra.*

While the application of the out-of-pocket damage rule, viz., section 3343 of the Civil Code, seems harsh in the instant case, it must be borne in mind that these rules are established to protect innocent victims of either direct or implied fraud. If this were an action to rescind, as previously noted, this court would be empowered in equity to make proper adjustments. However, since it is grounded to the affirmance of the contract, our hands are tied, even though the victim of this fraud might thereby appear to be unjustly enriched.

Insofar as the judgment relates to the amount of damages awarded to the cross-complainant in an incorrect amount, it is reversed with instructions to the trial court to include in its judgment an additional amount of $6,662.52, which sum represents cross-complainant's expenditures in connection with her improvements to the aforementioned real property, plus interest on the entire judgment to be calculated with reference to the dates of expenditures of the several amounts thereby represented.

Draper, Acting P. J., and Shoemaker, J., concurred.

A petition for a rehearing was denied January 18, 1961, and the petition of cross-defendant and appellant for a hearing by the Supreme Court was denied February 15, 1961. Traynor, J., and Peters, J., were of the opinion that the petition should be granted.