[Civ. No. 4135.   Third Appellate District.—September 24, 1930.]

ALINE DOHRMAN, Respondent, v. J. B. ROOF, IN-
CORPORATED (a Corporation), Appellant.

Henry P. Goodwin and Burton Briggs Crane for Appellant.

Sherman & Sherman for Respondent.

LUTTRELL, J., *pro tem.*, DELIVERED THE OPINION OF THE COURT.—Plaintiff and respondent brought this action against defendant and appellant and one John G. McIntyre, sued under the name of John Doe McIntyre, for the rescission of a contract for the purchase by her from said J. B. Roof, Incorporated, of certain real property situated in the city of Los Angeles, state of California, and for the recovery of the sum of $3,850, paid by her on the purchase price of said property, together with interest on said amount from date of payment. The basis of her suit is alleged fraud and false representations made to her by said McIntyre while acting as agent of defendant, J. B. Roof, Incorporated, in the sale of the property.

In her complaint, she charges, that said McIntyre, as such agent of said J. B. Roof, Incorporated, with intent to deceive her, and to induce her to enter into said contract, falsely represented that the parcel of land she sought to purchase was larger in area than the parcel actually purchased, and also that such agent made to her certain false representations with reference to certain improvements to be made on property adjacent to the land which she was purchasing.

Defendant, J. B. Roof, Incorporated, answered plaintiff's complaint, admitting some of the facts therein stated, but denying most of the allegations thereof, and also interposing the defense of laches on the part of plaintiff in rescinding the contract of purchase. The defendant McIntyre was not served with process and did not appear in the action. The cause went to trial as to the plaintiff and the defendant, J. B. Roof, Incorporated, and judgment was rendered in favor of plaintiff rescinding said contract of purchase and for the recovery of said $3,850 which she had paid on the purchase price of the property, with interest. Defendant and appellant moved for a new trial, which motion was denied and this appeal was taken from the judgment.

Appellant relies upon two grounds for a reversal of the judgment: First, insufficiency of the evidence to support the findings and the judgment; and second, errors of the trial court in the admission and rejection of evidence.

The trial court found in favor of respondent upon all of the material allegations of her complaint, except that no finding was made upon the charge of fraud and false representations relative to improvements to be placed upon property adjacent to the property purchased. The court found that respondent was not guilty of laches in rescinding the contract of purchase, and also made a further finding that there had not been a meeting of the minds of the parties to the contract by reason of the fact that the description of the land inserted in the contract was not the true description of the property, as represented to plaintiff by defendant's agents.

Counsel for appellant, in their closing brief, recognize the rule that where there is a conflict of evidence upon any issue, this court will not disturb the trial court's finding upon such issue. Keeping in mind this rule of law, we

will proceed first to a consideration of the evidence given at the trial, with a view of determining whether or not there is sufficient support in such evidence for the findings and the judgment.

The evidence shows, without conflict, that appellant owned a piece of land in the city of Los Angeles, known as the "Bandini Tract", and that the land had been platted and subdivided for the purposes of sale. A map of the tract had been prepared and recorded in the office of the county recorder of Los Angeles County, and was designated as "Tract No. 8047". This map set forth the names and location of the various streets, alleys and avenues laid out in said tract, as well as the different lots therein, each lot being designated by a certain number, and each lot having the dimensions of same, in feet, and the courses of its boundaries marked thereon. The particular parcel of land involved in this suit is a portion of lot number 500 as designated on said recorded map. This lot number 500 is irregular in shape, and as shown on said map, is bounded on its northeasterly side by a street named Leonis Street, on its southeasterly side by an avenue named Gabriel Avenue; on its southwesterly side by a street named Nobel Street; and on its northwesterly side by lots numbered 501 and 524 of said tract. On this recorded map lot 500 is shown in one parcel. Appellant and its alleged agent, McIntyre, had two unrecorded maps of such tract, on both of which said lot 500 is shown to be divided into two parcels by a line running through said lot from Leonis Street to Nobel Street. On said two unrecorded maps the parcel of said lot abutting on lots 501 and 524 is designated as 500A, and the parcel bordering on Gabriel Avenue is designated as 500B. One of these unrecorded maps hung on the wall of a tent situated on said Bandini Tract, in which tent lunches were served and lectures delivered to prospective purchasers. It was stipulated at the trial that the parcel designated on said unrecorded maps as 500B bordered on Leonis Street 90 feet; on Gabriel Avenue 79.33 feet, and on Nobel Street 69.55 feet. The evidence shows that in the month of October, 1924, respondent, at the request of and in company with one Mrs. Ruth Down, visited said Bandini Tract with a view of making a purchase. Said John G. McIntyre was on the tract at the time, and after the two

ladies had been served with lunch and had listened to a lecture pertaining to the tract, said McIntyre proceeded to show them over the property. After viewing different parts thereof, they came to this lot 500. As to just what was said and done here the evidence is in conflict, respondent and Mrs. Down testifying that said McIntyre showed respondent, and at her request, stepped off a parcel of land bordering on Leonis Street a distance of 100 feet, on Gabriel Avenue 78 feet, and on Nobel Street 99 feet and being 123 feet wide on the rear side thereof, or on the line running from Leonis Street through to Nobel Street. Respondent and her witness, Mrs. Down, testified that no map of the tract was shown them, and respondent said in effect that she had no knowledge or information as to the size or dimensions of the said parcel shown her other than the statements made by said McIntyre and what she saw when he stepped the land off for her. She testified that she told McIntyre at the time that she had some doubt in her mind as to whether a lot having a frontage of 100 feet on Leonis Street and having the other dimensions above given, would be large enough for her, and that she asked him how far the 100-foot lot would go, and he stepped it off and showed her where the line would be, and told her that an oil station or a movie-house or a bank could be built thereon. Respondent further testified that on the occasion mentioned, said McIntyre informed her that the side of the lot bordering on Nobel Street would be a "shade" less than 100 feet long, and that she asked him what he meant by "a shade less," and he replied that it would be 99 feet and would border on Nobel Street 99 feet. Mrs. Down corroborated respondent fully in these particulars. Said J. G. McIntyre, called as a witness for appellant, sharply disputed the testimony given by respondent and Mrs. Down in these respects. He testified that he showed respondent and Mrs. Down a map on which said parcel of land shown them was designated as number 500B, and that on said map the dimensions of said parcel 500B were set forth as being 90 feet on Leonis Street, 79.33 feet on Gabriel Avenue and 69.55 feet on Nobel Street. He further testified that in addition to showing them such map, he told them the dimensions of such parcel, giving the figures last herein mentioned. Respondent testified that some two days subsequent to her

first visit to the land, she and Mrs. Down against visited same, and in company with McIntyre viewed the parcel in which she was interested, and that on this visit about the same conversation took place between her and Mrs. Down and McIntyre as on the previous occasion. Other visits were also made by her to the land. The evidence shows that on one of these several visits a preliminary sales agreement was signed, whereby respondent agreed to purchase for $11,000 what was described therein as lot 500B of said tract. Subsequent to signing this preliminary agreement, and on some date prior to November 1st of that year, respondent took her husband to the parcel and viewed same with him. On November 1st of the same year, the final purchase agreement was prepared in duplicate by appellant and sent to respondent for her signature, Mrs. Down taking the document to respondent for this purpose. In so far as any description of the land being purchased was concerned, the agreement was blank. Respondent signed both copies of the agreement in this form and made the initial payment of $3,850 on the purchase price of the land. The balance of the purchase price of $11,000 was, according to the agreement, to be paid in monthly installments of $165, or more, commencing on January 1, 1926. Respondent, after signing the agreement, sent both copies of same back to appellant for execution by it, and in due time received her copy of same from appellant by mail. She testified that she thereupon, without looking further at the agreement, placed it in the bank in her safety deposit box, and that it remained there for about nine months or so, when, having occasion to take it out, she discovered for the first time that a rider had been attached to the agreement after she had signed it and had sent it to appellant, which said rider contained a description of the parcel of land covered by such agreement. The description thus given was for the parcel of land designated on the unrecorded maps hereinbefore referred to as lot 500B, having a frontage on Leonis Street of only 90 feet; on Gabriel Avenue of 79.33 feet, and on Nobel Street of 69.55 feet. The evidence further shows that respondent, upon discovering this fact, took the matter up with appellant and his representative, in an effort to get an adjustment of same, but failed in this endeavor. She thereupon

gave notice of rescission of the contract and proceeded to institute the present action. In passing upon this conflict in the evidence as to what occurred on the ground and what representations were there made by the agent McIntyre, the trial court resolved the conflict in favor of respondent.

In addition to testifying as above set forth, respondent testified that in purchasing the property she relied upon what McIntyre told her with reference to same and believed that what he told her was the truth, and further, that she would not have purchased the lot had she known that it was not as large as he represented it to be. ▪ The court specifically found that respondent was induced to sign the purchase agreement by reason of the representations of appellant's agent hereinbefore mentioned, as to the size and area of the lot she was purchasing; that such representations were false and fraudulent and were made by appellant's agents with a knowledge of their falsity, and that respondent relied upon such representations so made, and was deceived thereby. We think that the finding thus made is amply supported by the foregoing evidence. It is quite apparent from an examination of the whole record before us that when respondent entered into the contract involved in this action, she honestly thought and believed that she was purchasing a lot extending 100 feet on Leonis Street, 78 feet on Gabriel Avenue, 99 feet on Nobel Street, and 123 feet on a line running from Nobel Street to Leonis Street, and that she was led into this belief solely by the false representations made to her at the time of purchase by appellant's duly authorized agent, J. G. McIntyre; whereas, in truth and in fact, she was actually acquiring, under her contract, a lot of much smaller area. The record of the evidence further convinces us that such false representations as to the dimensions of the lot involved were made with intent that they should be believed and acted upon by respondent, and that she did believe and did act upon same to her damage.

▪ It is well settled that a misrepresentation of the areas of real property is a misrepresentation of a material fact, and, if relied upon, may be the basis for a rescission of a contract of sale. (12 Cal. Jur., p. 740, sec. 23; *Mosher* v. *Lack*, 41 Cal. App. 23 [181 Pac. 813]; *DeBairos* v. *Barlin*, 46 Cal. App. 665 [180 Pac. 188, 190]; *Patterson*

v. *John P. Mills Organization,* 203 Cal. 419 [264 Pac. 759].)

Counsel for appellant contend that the evidence in the case shows that respondent, in making her purchase, did not rely upon the representations of appellant or its agents, but relied upon her own judgment and observation of the premises, and upon the judgment of her husband and of Mrs. Down. The claim is also made that Mrs. Down was associated with respondent in the transaction, and was interested financially therein. As to these contentions it is sufficient to say that the trial court, upon ample evidence, found to the contrary. ■ The contention is also made that the reason for the attempted rescission of the contract was the inability of the respondent, after purchasing the property, to sell same at a profit. Motive of a vendee for rescinding a contract of purchase, however, is not a proper subject of inquiry when a legal reason exists for the rescission and the vendee has relied thereon. (*DeBairos* v. *Barlin, supra.*)

Appellant further contends that respondent had access to the proper means of obtaining information with respect to the property which she was about to buy; that opportunity was afforded her to investigate the property, and to verify the representations made to her, and that therefore, if she neglected to make such investigation, and made a bad bargain, she cannot complain. Such is not the law. ■ The owner of real estate is presumed to know the area and boundaries of his own land, and a prospective purchaser has a right to rely upon the representations of the seller with reference thereto. It is true that if a purchaser undertakes to make an investigation for himself, after a representation of a fact has been made to him, and has recourse to the proper means of obtaining information, and actually learns the real facts, he cannot claim to have relied upon the misrepresentation and to have been misled by it. ■ In the instant case, there was no sufficient evidence of any attempt on the part of the purchaser to make an independent inquiry or investigation of her own as to the area or dimensions of the lot she was buying. She relied, as she had a right to do, upon the representations of appellant's agent as to these particulars.

Having concluded that the evidence in the case is sufficient to sustain the findings and the judgment of the court below, we will now pass to a consideration of the other ground relied upon for a reversal of the judgment,—that of claimed errors in the admission and rejection of evidence. There are many of these claimed errors in the record. We have carefully considered each and all of them and have reached the conclusion that the appellant was not prejudiced by any ruling made by the trial judge in this regard. It will serve no useful purpose to discuss in this opinion all or any considerable number of these rulings of the court in the admission and rejection of evidence, which are cited as having been prejudicially injurious to appellant. A brief consideration of some of the most important rulings in this regard will suffice.

■ Objection was made to counsel for respondent eliciting from her what conversation took place between her and J. G. McIntyre on the ground at the time of the negotiations for the purchase of the lot. This evidence is clearly admissible, as the entire record shows beyond question that McIntyre was the authorized agent of appellant in the sale of the property. ■ Throughout the trial counsel for appellant attempted to prove an agreement existing between respondent and Mrs. Ruth Down, showing that they were jointly interested in the purchase of the lot in question. This line of evidence the court properly held to be immaterial. The transaction, according to the issues raised by the pleadings, was between appellant and respondent. Mrs. Down was not made a party to the action and had no connection with the case, unless it be that she acted as appellant's agent in interesting respondent in the property in the first instance and in securing respondent's signature to the contract of purchase for appellant. We do find that appellant, through its agent, McIntyre, paid a commission of $770 to Mrs. Down for some purpose in connection with the deal between it and respondent. ■ Appellant complains that he was not permitted to prove the value per front foot of the lot purchased. The value of the property per front foot in dollars and cents was immaterial. If the purchaser desired and thought she was getting a lot having a front footage of 100 feet, she was entitled to same and was not compelled

to accept a lot having a front footage of only 90 feet, irrespective of values.

As was said in the case of *DeBairos* v. *Barlin, supra:*

"The use to which such a lot may be put in the future is uncertain. The defendant may have had an idea at the time of purchasing, of using the place as a home, but he was not bound by that intention. It was his privilege to use the lot in any manner that might be most profitable at any later date, or to sell the same for use by others. There might be many uses to which an eighty foot lot could be put which would not be equally well met by a seventy-seven and one-half foot lot. The sale value of such a lot might be materially different if it contained eighty front feet, than it would be if it contained only seventy-seven and one-half feet, and the difference in value, we think, would not be a matter of exact measurement."

Respondent was permitted, over appellant's objection, to call J. G. McIntyre to the witness-stand and cross-examine him, as an adverse party under the provisions of section 2055 of the Code of Civil Procedure. Said McIntyre was named as one of the defendants of record in the case, although, as heretofore stated, he had not been served with process, nor had he made an appearance in the action. No authorities have been cited on the point by counsel on either side, and probably there are none to be found. It would seem that a reasonable construction of this section of the code would permit the calling of this party, as an adverse party, under the circumstances. However, we are satisfied from an examination of the record that appellant suffered no prejudice in the premises, as the testimony, given by this witness was very favorable to its side of the case. Later on in the trial appellant sought to call this same party as an adverse witness under this same section of the code, but was not permitted to do so, and error is claimed for this refusal. Certainly the court was right in this ruling. There was no pretense that McIntyre was a party-plaintiff in the action. Complaint is made of the court's rulings excluding evidence of conversations had between J. G. McIntyre and Mrs. Down, out of the presence of respondent. Such evidence, under the state of the record, was hearsay and immaterial and properly excluded. The apparent theory upon which the appellant's

counsel sought to elicit this evidence was that the witness Down was a copartner of respondent in the purchase of the lot, or was at least financially interested with her in the venture, as he had attempted to show, and therefore, that conversations between her and appellant's representative would be binding upon her copartner as associate in the transaction. A fair construction of the evidence before the court, however, is that the only connection between respondent and Mrs. Down in the premises, if same may be termed a connection at all, was that Mrs. Down was to take care of the monthly payments under the contract, for respondent, in the event that respondent should not have the money to make such payments as same fell due. At any rate we fail to see how the exclusion of this evidence prejudiced appellant, in view of the fact that the trial judge, as shown by his decision, believed that appellant's agent, McIntyre, stated to respondent, on the ground, that the lot she contemplated purchasing had a frontage of 100 feet on Leonis Street, and actually stepped off for her, at her request, and in her presence, said distance of 100 feet, and showed her, by extending his arms, where her line would be.

Finally, the claim is made that error was committed by the court in not permitting appellant's counsel to read into the record a certain document consisting of three typewritten pages of matter, which document said counsel termed an ''offer of proof''. We are not advised as to the contents of this document, as it nowhere appears in the record, but certainly no error was committed in refusing the offer, as the court plainly told counsel to call his witnesses and examine them, and that rulings would be made on the offered evidence as questions were asked. This, apparently, counsel did not see fit to do, but chose, rather, to rely upon this so-called ''offer of proof''.

In considering this appeal we have not entirely overlooked the finding of the trial court showing that the minds of the contracting parties did not meet in the making of the contract of purchase, nor the finding which seems to be to the effect that a mutual mistake of the contracting parties was made in the making of the contract. Nor have we overlooked the contention of counsel for respondent that these two last-mentioned findings are sufficient to support

the judgment of rescission and recovery of the purchase money paid, irrespective of the question of fraud and misrepresentation. We have not discussed these findings herein, for the reason that we chose rather to rest our decision in the case squarely upon the issues, as presented by the pleadings. As we construe the pleadings, fraud and false representations are the only grounds relied upon therein for the relief sought.

We do not deem it necessary nor advisable to prolong this opinion by any further discussion of the errors, claimed to have been committed in the trial of this action. We are fully satisfied that no prejudicial errors occurred, and that substantial justice was meted out to the parties litigant.

The judgment is affirmed.