[Civ. No. 14511. First Dist., Div. One. Jan. 24, 1951.]

ADRIEN BRAMARIC et al., Appellants, v. KOSTA M. CHURICH, Respondent.

Appel, Dains & Liebermann and Albert Picard for Appellants.

Holloway Jones, Hugh K. McKevitt and Thomas C. Vassar for Respondent.

BRAY, J.—Judgment went for defendant, in an action for $37,500 on a common count for money had and received, based on an attempted rescission of a contract of sale because of alleged misrepresentations. Plaintiffs appeal.

### CONTENTION OF PLAINTIFFS

The principal question is whether the evidence is sufficient to support the findings. There are no specific findings of fact. The court merely found that the allegations of the common count in the complaint were untrue and that defendant was not indebted to plaintiffs in any sum. Plaintiffs contend that they are entitled to rescind the contract hereafter mentioned on two grounds: (1) misrepresentation as to the size of the real property sold; and (2) misrepresentation as to the rentals approved by the OPA.

### UNDISPUTED FACTS

The undisputed facts show that defendant was the owner of an apartment and rooming house property located on the south side of California Street, between Hyde and Larkin, in San Francisco. The building apparently is divided into five apartments and 10 rented rooms. All of the apartments and rooms were rented except the apartment occupied by the owner, apartment 2. In buying the property plaintiffs dealt with a real estate agent named Millspaugh with whom defendant had listed the property for sale. Millspaugh gave plaintiffs at the beginning of the negotiations a writing referred to as a "listing." This listing gave the "lot size" as 25 by 120 feet. Actually the lot is 25 by 110½ feet. It gave the income or rental (including $82 for apartment 2) as $483 per month. These were the rents actually being received by defendant, excepting, of course, that the owner

was occupying apartment 2 from which he received no rent. However, there is no controversy concerning the value placed on that apartment, as plaintiffs understood the situation, and agreed that defendant should continue to occupy it, paying $82 per month. The OPA approved rentals were only $313, which, with the agreed estimate of $82 for apartment 2, made the approved income only $395. However, in spite of the fact that, after purchase of the property, plaintiffs discovered the discrepancy between the OPA allowances and the actual rentals, plaintiffs continued, even including the time of trial, to collect the same rentals as charged by defendant, namely, $483, including the $82 for apartment 2. The evidence is not clear as to whether this was with or without OPA approval. Since serving notice of rescission plaintiffs have refused to accept rent from defendant. Actually, plaintiffs collected a few dollars more than this amount in certain months, due to a double occupancy of certain rooms. Apparently OPA regulations permit such additional charge.

Plaintiffs did not receive a copy of the title company's preliminary report, nor did they receive the recorded deed or title insurance policy, until about three months after the transaction was closed. In all these documents the property was properly described, showing that its depth was only 110½ feet. Defendant testified that on one occasion before the deal was closed he gave the "papers, deeds and policies" to plaintiff Adrien and Millspaugh and "both look at papers, deeds and policies." The only deed specifically identified as being in this group was the deed by which defendant had acquired the property, which apparently contained the proper description. Plaintiffs visited the property on two or three occasions before the sale was consummated. The rear portion of the premises is not covered by the apartment building, but is used as a garden. ■ There is no evidence that plaintiffs checked the size of the lot. They were not required to do so and were entitled to rely upon the representation. (*Harder* v. *Allred*, 61 Cal.App. 394 [214 P. 1017].) They testified that they relied upon the representation in the listing. Nor is there any evidence of the difference between the value of the lot as it actually is, and as represented. Apparently defendant originally had secured OPA approval of the rents charged when the building was used exclusively for apartments. Thereafter he converted certain apartments to rooms and rented the rooms separately. He had obtained no OPA approval of the rentals charged for these rooms.

## OPA Regulations

It is not clear from plaintiff Adrien's testimony (he did all the negotiating on behalf of plaintiffs) just what the oral representations made were. The listing showed the income without mention of OPA. Plaintiff Adrien testified that he asked defendant if he had ever obtained an increase in rents from the OPA and defendant had said that he had not. (There is no evidence that he had.) However, taking the listing and some of the rather indefinite testimony of plaintiff Adrien together, it can be assumed that defendant did represent that the listed rentals were OPA approved. (Impliedly the court found that there was no such representation.) But even with such assumption, plaintiffs cannot recover for two reasons: first, there is sufficient evidence to support the implied finding that plaintiffs did not rely on such representation; and secondly, plaintiffs have in no way been damaged by it.

*1. Plaintiffs Did Not Rely on the Representation.*

Attorney Divine testified that he had been employed by Millspaugh, defendant's agent, to draw the deed and bill of sale from defendant to plaintiffs, and make certain prorations; that on January 19 (plaintiffs made the final payment January 31) the parties met at the title company; that in trying to prorate rents he could not reconcile the OPA "slips" with the rents being collected (there were OPA slips only for the apartments and none for the rooms); that he told plaintiff Adrien to go over to the OPA and check; that Adrien said he would have his attorney attend to it and would not close the deal until this was done. Both plaintiffs denied Divine's testimony. Adrien testified that on this occasion, when they gave him the OPA papers, "I saw right away it looks sick like something was wrong because there was only five papers from the OPA when there was suppose to be fifteen"; "I only see five sheets listing of five apartments instead of five apartments and ten rooms"; "I thought this was something suspicious about it" and that he told Millspaugh he was not going to sign that day. He then went to see an attorney. That attorney was sick so he saw the partner. He left the five OPA slips with him. A few days later, the attorney called Adrien and said, "As far as the OPA is concerned . . . everything is O. K." Thereupon, the plaintiffs closed the transaction. It is obvious that this is sufficient to support an implied finding that plaintiffs did

not rely upon defendant's representation, but on the investigation and advice of their own attorney.

### 2. *No Damage.*

█ From the time that plaintiffs took possession of the property until now, they have never collected less than the rentals shown on the listing. "THE COURT: . . . you're charging the same rents now as you did when you took the place over? THE WITNESS: Your Honor, yes. THE COURT: So that you haven't lost anything as a result? THE WITNESS: Well, I don't lose anything . . ." Plaintiff Adrien testified that in April he discussed with the OPA representative the matter of a $2.00 extra charge to one of the tenants for cooking in the room, and was then informed that there was no OPA approval for rental of the rooms. The record is not clear as to whether or not plaintiffs then obtained the necessary approval. However, inasmuch as the OPA was thereby put on notice as to the rentals charged for the rooms, and as plaintiffs continued for months thereafter to charge these rentals, it is reasonable to infer that such OPA approval has been obtained. Thus, the court's implied finding that the misrepresentation, if any, was not a material one and that no damage resulted is well supported.

### AREA SHORTAGE

█ Plaintiff Adrien testified that there were no oral statements made to him by either defendant or Millspaugh concerning the size of the lot except that he asked Millspaugh what the real size of the lot was, and Millspaugh told him the Lang Realty Company had the information, and later when he asked Millspaugh if he was sure that the size as listed was correct, Millspaugh said "absolutely." Millspaugh denied these conversations, although admitting that he gave plaintiffs the incorrect listing. The listing is on the stationery of the Lang Company, and it shows the lot to be 120 feet deep. Millspaugh testified that this information was originally furnished by defendant. Plaintiff Adrien was asked if on January 31 when he deposited the purchase price with the title company, he saw the preliminary report and the deed from defendant to plaintiffs. He replied, "I don't remember." There was no testimony that he did see them. Thus, the only representation as to depth is that appearing in the listing. It is doubtful whether that representation, standing alone and limited as it was by the statement that it was not guaranteed, is, under the circumstances of this case,

a sufficiently positive representation upon which to base a rescission. The fact that plaintiffs made no inquiry as to whether or not it was correct (we must assume the court did not believe Adrien's testimony on this subject), coupled with the fact that they introduced no evidence that it was an inducing factor in the purchase of the property, is quite significant. Plaintiffs, in their negotiations over the purchase of the property, had considerable discussion concerning the rents, but at no time discussed the size of the property. This was apartment house property and it is a reasonable inference from the evidence that plaintiffs were concerned, not about the exact size of the property, but about the income it would bring. Plaintiffs at no time testified that the exact depth of the property was a material matter, nor is there any evidence that this apartment house property, of which a portion is used as a garden, is of materially less value than it would have been had the lot been 9½ feet deeper. It is true that plaintiff Adrien said he would not have purchased had he known that the depth was only 110½ feet. Yet when the court tried to find out if the depth really was an inducing factor plaintiff either intentionally or unintentionally evaded the question. "THE COURT: Were you concerned about the size of this property? Was that any concern of yours? THE WITNESS: I beg your pardon, your Honor? THE COURT: Were you concerned about the size of the property? You looked at it, did you not? THE WITNESS: I did look at it, yes. THE COURT: Were you concerned as to the depth of the property and the width? THE WITNESS: Well, as I say, your Honor, I don't—I'm very—I don't know much about it." Throughout his testimony plaintiff Adrien was evasive and contradictory. Repeatedly throughout the trial plaintiff Adrien had denied making any investigation of the OPA situation. On cross-examination he rather reluctantly admitted obtaining the advice of an attorney. His testimony as to the rentals actually being received by him was contradictory. In his deposition he was asked if he had his attorney check the OPA figures. He denied that he had, saying he intended to see someone else. When asked who the someone else was, he said, "I don't know for to tell you," and his attorney instructed him not to answer. At no time during his deposition did he testify to having seen an attorney about the matter. In view of his own lack of credibility and the circumstances, the court had the right (which it apparently exercised) of refusing to believe that plaintiffs would not have purchased had they

known the true depth of the lot. Defendant produced a general insurance broker named Draghicevich who testified that a few days after plaintiffs purchased the property plaintiff Adrien, in a conversation over a glass of wine at plaintiff's home, stated that if plaintiffs had known that the operation of the property required someone to be there all the time, they never would have purchased it. While it has been held that where a person has a right to rescind a contract of sale, the court cannot consider his motives in so doing (*Crim* v. *Umbsen,* 155 Cal. 697 [103 P. 178, 132 Am.St.Rep. 127]), this statement to Draghicevich is significant on the question of whether the representation as to the depth was an inducement, and whether the discrepancy is important. The evidence, then, supports the court's implied finding that the size of the property was not an inducing factor, that plaintiffs would have purchased it even though they had known its true size, or that the difference in area did not constitute a material difference in value.

Plaintiffs point out that the difference in area between the property as listed and as conveyed amounts to 8½ per cent and contends that this court must take judicial notice of the fact that in the "congested downtown apartment section of San Francisco" such an area is extremely valuable. They have cited no cases showing that we may take such knowledge. It may well be that in the section where this property is located the garden portion of apartment premises is, within limits, of relatively little value. On the other hand, it may well be that, because of the probability that sometime in the future it will be advisable to cover the entire property with a building, such portion is highly valuable. There is no evidence in the case to enlighten us on the subject. As pointed out before, the plaintiffs' lack of inquiry, plus their failure to produce proof, would indicate that the value of the property lies in its income production rather than in its area. In most of the cases cited by plaintiffs where there was misrepresentation as to area, there was evidence either that the area represented was an inducing factor, or that the property conveyed was less valuable than it would have been if it was as represented. *Younis* v. *Hart,* 59 Cal.App.2d 99 [138 P.2d 323]; *Hargrove* v. *Henderson,* 108 Cal.App. 667 [292 P. 148]; *Montgomery* v. *McLaury,* 143 Cal. 83 [76 P. 964]; *Quarg* v. *Scher,* 136 Cal. 406 [69 P. 96]; *Mills* v. *Hellinger,* 100 Cal.App.2d 482 [224 P.2d 34], are a few in this category. However, in *Dohrman* v. *J. B. Roof, Inc.,* 108 Cal.

App. 456 [291 P. 879], it was held (p. 465): "Appellant complains that he was not permitted to prove the value per front foot of the lot purchased. The value of the property per front foot in dollars and cents was immaterial. If the purchaser desired and thought she was getting a lot having a front footage of 100 feet, she was entitled to same and was not compelled to accept a lot having a front footage of only 90 feet, irrespective of values." (See also *Von Bargen* v. *Ginsberg*, 218 App.Div. 545 [218 N.Y.S. 601], affirmed 245 N.Y. 647 [157 N.E. 894].) The Dohrman case based its decision on language in *de Bairos* v. *Barlin*, 46 Cal.App. 665 [190 P. 188], to the effect that a purchaser has the privilege of using his purchase in any manner that might be most profitable to him, including sale; that "There might be many uses to which an eighty foot lot could be put which would not be equally well met by a seventy-seven and one-half foot lot" (p. 670), and that the sale value of the latter might be materially different from that of the former. But the court said (p. 669): "Of course, the question of what is a material difference between the actual and represented description of land is a *question of fact* and varies with the circumstances and the uses of the land and the size of the parcel being sold." (Emphasis added.) In *Eichelberger* v. *Mills Land etc. Co.*, 9 Cal.App. 628 [100 P. 117], the land sold was represented as being 270 feet in width, whereas the court found it to be of less width, but did not specify how much. In sending the case back to the trial court to determine the difference, the Supreme Court said (pp. 638-639): "Fraud, in order to warrant the rescission of a contract, must be accompanied by some appreciable loss or damage; for 'courts of justice do not act as mere tribunals of conscience to enforce duties which are purely moral and involving no pecuniary or tangible injury (*Wainscott* v. *Occidental etc. Assn.*, 98 Cal. 253 [33 P. 88]); and where the right to rescind is based upon a failure of consideration such failure must be in a material respect. (Civ. Code, sec. 1689, subd. 4.) . . . [I]t cannot be determined from the findings whether the deficiency in width so found to exist is such as to entitle plaintiffs to rescind the contract on account of appreciable loss or damage, nor whether the width is sufficiently less to constitute a material failure of consideration."

The only evidence in our case that the difference in depth of land might be material was plaintiff Adrien's testimony that had he known of that difference, he would not have

purchased. In view of the peculiar circumstances of this case and the unreliability of the testimony of plaintiff Adrien, the court could reasonably have concluded that the plaintiffs would have purchased the property even had they known of the difference, and that, in the words of the de Bairos case, *supra,* page 669, there was no "material difference between the actual and represented description of land." It is of some significance that although plaintiff Angele Bramaric appeared as a witness, she at no time testified that she would not have purchased had she known of the difference in depth. "Where a party seeks a rescission of a contract on the ground of a false suggestion, it must appear that the misrepresentation complained of was as to a material fact, by which the party was induced to make the contract, and that he was actually misled thereby to his injury; for a naked misrepresentation, however wrong it may be in point of morals, unaccompanied by any actual damage or injury, does not afford ground for relief against an executed contract. Neither Courts of law nor equity enforce obligations or redress wrongs which are such only *in foro conscientiae,* and are followed by no loss or damage." (*Board of Commissioners* v. *Younger,* 29 Cal. 172, 176.) ". . . [T]his court has said that a mistake as to the number of acres 'affords no ground of action by either party against the other unless it be made to appear beyond controversy by clear and positive testimony that quantity constituted one of the principal conditions of the contract and did not operate merely as an inducement to the purchase.' (*Commissioners* v. *Younger,* 29 Cal. 172.)" (*Harding* v. *Robinson,* 175 Cal. 534, 538 [166 P. 808].)

Judgment affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.