[Civ. No. 21301. Second Dist., Div. One. May 28, 1956.]

WILFRED RICHARD et al., Appellants, v. HARRISON R. BAKER et al., Respondents.

Wallace & Wallace for Appellants.

J. Clifford Argue and Wilbur E. Quint for Respondents.

FOURT, J.—From a judgment of nonsuit in an action for damages for fraud and misrepresentation, plaintiffs appeal.

In their complaint plaintiffs allege that on or about the 10th day of January, 1949, defendants, doing business as a copartnership under the name of La Canada Acres, were engaged as owners in selling a certain tract of land in the county of Los Angeles known as Tract Number 15282; said defendants had theretofore subdivided said tract into lots, among which was a lot designated as number 9; on said date, defendants exhibited Lot 9 to plaintiffs, as prospective purchasers thereof, and at said time and place pointed out and indicated to plaintiffs the boundary lines of said lot; de-

fendants represented and designated to plaintiffs that the easterly boundary line of said lot, which was the boundary between Lot 8 and Lot 9 of said tract 15282, was indicated at the front thereof by a marker in the circular curb of the street, and at the rear thereof by a stake driven into the ground and a pole bearing electric wires; plaintiffs had no information concerning the boundary between Lot 8 and Lot 9, and relied solely upon the statement of defendants as to the location of said boundary; Lot 9 and both lots adjoining thereto were vacant and unimproved at that time; thereafter, relying upon the representations of defendants as to the true and correct boundary between Lot 8 and Lot 9, plaintiffs purchased Lot 9 from defendants; plaintiffs intended to purchase and defendants intended to sell to plaintiffs the area as pointed out, and all of the parties understood and intended that the easterly boundary of Lot 9 should be as marked by the pole and stake and curb marker; thereafter plaintiffs constructed a residence on Lot 9, entered into possession thereof and planted a lawn and shrubbery, installed a sprinkling system, erected a wall, and built a fence along the easterly boundary of said lot; in the month of July, 1953, plaintiffs discovered that the representations of defendants as to the boundary of Lot 9 were false and untrue; that the true location of the boundary line of Lot 9, between it and the immediately adjoining Lot 8, was not as represented by the defendants but was in fact located three feet to the west of the indicated line in the front of Lot 9, and 32 feet to the west in the rear of the lot line, and the stakes and markers indicated by defendants did not correctly locate the boundary line of Lot 9; that plaintiffs have been compelled to remove certain of their improvement to their damage in the sum of $850; that because of the misrepresentations of defendants as to the area of the lot and the location of plaintiff's residence thereon in accordance with such representations, the reasonable market value of plaintiffs' property has decreased to their damage in the sum of $5,000.

At the trial, plaintiff Wilfred Richard testified that early in 1949, he purchased Lot 9 of Tract 15282, as per map recorded in Book 323, page 2, records of Los Angeles County from the defendants. The deed was received in evidence. Mr. Richard further testified that prior to such purchase he and his wife, Marie Richard, were looking around the area and contacted the agent, Hauck, who pointed out the boundaries of Lot 9 to them. Counsel for defendants ob-

jected to any further testimony with reference to the boundaries on the grounds that the parol evidence rule would not allow the introduction of any evidence to contradict the terms of the written document.

Plaintiffs then made an offer of proof, the essence of which was that they were taken onto the property in question, when it was vacant land, by Mr. Hauck, the agent of defendants; that Mr. Hauck pointed out the boundary lines of Lot 9, indicating that the northeasterly boundary line of Lot 9 was near a telegraph pole and stated at that time, "there is your northeasterly boundary line"; that plaintiffs and defendants entered into an escrow and plaintiffs paid for the lot; that defendants gave plaintiffs a deed describing Lot 9; that plaintiffs entered into possession, presented plans and specifications to the defendants of the house to be constructed upon the property, showing its location upon the lot; that the house was built and while being built the agent was upon the property; that the plaintiffs improved the property, which was described and pointed out to them by the agent as being the property which they were purchasing, by landscaping, building retaining walls, planting shrubs and installing a sprinkling system and erecting a fence along the line from the telegraph pole to the street; that the plaintiffs built the house in conformity with the boundary lines pointed out to them by the agent; that in 1953, when Lot 8 was sold it was discovered that the area between the boundary line pointed out to the plaintiffs and the true boundary line between Lots 8 and 9 was occupied by shrubbery placed there by plaintiffs; that it was then discovered that the true line of Lot 9, that is the northwesterly corner thereof, was about 32 feet to the west of where it had been pointed out as being; that plaintiffs' house was located within three feet of the true property line, rather than about 10 feet from the property line as plaintiffs had supposed; that had the true line been pointed out in the first instance, plaintiffs would have had ample space within which to construct their house to the west, and could have been well within the tract restrictions; that plaintiffs would offer the escrow instructions dated January 7, 1949, in evidence to show the purchase price and the restrictions referred to; that Mr. Hauck, the person who pointed out the boundaries, was the agent of the defendants; that the area in question consisted of about 1,300 square feet in a triangular shape; that the market value of the property is less with the house constructed where it is

than it would have been had it been constructed in conformity with the true boundary line; that the plaintiffs relied upon the representations made to them as to the true location of the boundary line; that the defendants pointed out to the purchasers of Lot 8 that the northwest corner of Lot 8 was the pole, the same being the common corner of Lots 8 and 9. The escrow instructions, a letter enclosing a copy of an agreement of sale and a sales agreement were offered in evidence under the offer of proof.

An objection was made to all of such offered testimony and the court sustained the same upon the grounds that it would tend to change the terms of a written instrument. Plaintiffs thereupon rested their case and defendants moved for a nonsuit, which motion was granted.

A vendee who has been induced to purchase property by fraud or deceit may, upon discovery, either rescind the contract or allow it to stand and sue for damages. (*Morey v. Bovee*, 218 Cal. 780, 783 [25 P.2d 2]; *Rothstein v. Janss Inv. Corp.*, 45 Cal.App.2d 64, 69 [113 P.2d 465].) A single material misstatement knowingly made by a vendor and relied upon by his vendee will warrant a rescission with damages, and a misrepresentation as to boundaries is a material misrepresentation. (*Younis v. Hart*, 59 Cal.App. 2d 99, 103 [138 P.2d 323].)

The respondents were the owners and sellers of the property in question, and as such they were presumed to know the area and boundaries of their own land. A prospective purchaser has a right to rely upon the representations of the seller concerning such existing facts and if the vendee suffers damage by reason of such representations, he has a good cause of action against the seller. (*Dohrman v. J. B. Roof, Inc.*, 108 Cal.App. 456 [291 P. 879]; *Hargrove v. Henderson*, 108 Cal.App. 667 [292 P. 148].)

In *Younis v. Hart, supra*, at page 104, the court said: "In the purchase of land the buyer has the absolute right to rely upon the express statement of the seller concerning an existing fact the truth of which is known to the vendor and unknown to the vendee."

Also, in *Nathanson v. Murphy*, 132 Cal.App.2d 363, at page 369 [282 P.2d 174], the court said: " 'As a general rule, the owner of real estate, in the absence of facts showing the contrary, is presumed to know the boundaries and area of his land, and a buyer is warranted in relying upon

his representations in respect to such facts.' (*Eichelberger* v. *Mills Land etc. Co.*, 9 Cal.App. 628, 634 [100 P. 117].)''

In the instant case, plaintiffs offered to prove that the agent of the defendants pointed out the location of the boundaries of the land sold. They had no good reason to doubt the veracity of the defendants or their agent; they did not independently check the size of the lot, nor were they required to do so. They were entitled to rely upon the representations made. (*Bramaric* v. *Churich*, 101 Cal.App. 2d 846, 848 [226 P.2d 657].)

In the case of *Dohrman* v. *J. B. Roof, Inc., supra,* 108 Cal.App. 456 at page 464, the court stated:

''Appellant further contends that respondent had access to the proper means of obtaining information with respect to the property which she was about to buy; that opportunity was afforded her to investigate the property, and to verify the representations made to her, and that therefore, if she neglected to make such an investigation, and made a bad bargain, she cannot complain. Such is not the law.

''The owner of real estate is presumed to know the area and boundaries of his own land, and a prospective purchaser has a right to rely upon the representations of the seller with reference thereto. It is true that if a purchaser undertakes to make an investigation for himself, after a representation of a fact has been made to him, and has recourse to the proper means of obtaining information, and actually learns the real facts, he cannot claim to have relied upon the misrepresentation and to have been misled by it.

''In the instant case, there was no sufficient evidence of any attempt on the part of the purchaser to make an independent inquiry or investigation of her own as to the area or dimensions of the lot she was buying. She relied, as she had a right to do, upon the representations of appellant's agent as to these particulars.''

In *Mills* v. *Hellinger*, 100 Cal.App.2d 482 [224 P.2d 34], certain real property which was advertised as comprising nine acres was auctioned. It in fact contained only 6.6 acres, and upon becoming aware that the representations were false, plaintiff rescinded and filed suit for his deposit on the purchase price. The court said, in deciding the case, that it is established that the owner of land is presumed to know the area and boundaries of his own land, and that the law is also established that the vendee has the right to rely on a vendor's representation as to the quantity of land he is

offering for sale and is not under a duty to make an independent investigation. As to the question of whether the plaintiff was presumed to know the extent of the land because it was a matter of public record the court said, at page 487: "The purpose of the recording acts is not to afford protection to those who make fraudulent representations but to bona fide purchasers for value. Therefore the party to whom fraudulent representations are made is not bound to make an investigation which would reveal the facts."

■ Defendants' agent either knew the true location of the boundaries and knew, therefore, that he was telling an untruth, or he should have known the true boundaries, and a representation made with intent that the recipient thereof shall act in reliance thereon is actionable when falsely made or made without sufficient information to warrant it. (*Gagne* v. *Bertran*, 43 Cal.2d 481 [275 P.2d 15].)

■ It is also settled that parol evidence of fraudulent representations is admissible as an exception to the parol evidence rule to show that a contract was induced by fraud. (*Mooney* v. *Cyriacks*, 185 Cal. 70, 81 [195 P. 922]; *Morey* v. *Bovee, supra,* 218 Cal. 780, 783; *Rothstein* v. *Janss Inv. Corp., supra,* 45 Cal.App.2d 64, 67.)

In *Ferguson* v. *Koch,* 204 Cal. 342 [268 P. 342, 58 A.L.R. 1176], with respect to the question of whether parol evidence is proper to prove false representations where there is a written contract of sale, the court said that where the parties have reduced to writing a complete and certain agreement, it will be conclusively presumed to contain the whole agreement of the parties in the absence of fraud, and parol evidence of prior contemporaneous or subsequent conversations or representations will not be received for the purpose of adding to or varying the written instrument. In such a case, what the seller may have said is not admissible to show that the contract was different from that expressed in the writing, and the parties will be held to their agreement and to no other. The court then stated, at page 347, "It is equally well settled, however, that a writing may be impeached for fraud, and a parol warranty really made may then be relied upon rather than the written one thus shown to be fraudulently imperfect or defective. . . . Parol evidence is always admissible to prove fraud, and it was never intended that the parol evidence rule should be used as a shield to prevent the proof of fraud. . . . There is no such sanctity surrounding a writ-

ing that parties may not be permitted to go back of it and show that there was such fraud practiced in the procurement of the same as to vitiate the writing. The law never countenanced a rule which would deny to one the right to prove that fraud had been practiced upon him. (Citing cases.) In actions for rescission on the ground of fraud the statutory provisions that when the terms of an agreement have been reduced to writing such writing is to be considered as containing all the terms (Code Civ. Proc., § 1856), and that the execution of a contract supersedes all prior negotiations or stipulations (Civ. Code, § 1625), have no application and do not control.''

■ It would seem to be axiomatic that public policy forbids the enforcement of an agreement relieving from the legal consequences of fraud. Indeed without such an exception the victim of the most aggravated fraud would be entirely helpless.

■ In the instant case it could not be determined from the face of the deed itself what the dimensions of Lot 9 were. The deed contained a mere reference to a map on file in the records of the county of Los Angeles. It is true that where a deed refers to a map, the map is regarded as incorporated in the deed as a part thereof. However, to get the dimensions of the lot or locate it the parties would have to go elsewhere than the deed itself. Plaintiffs contend that they did not purchase Lot 9 as the same is delineated on a map in the recorder's office, but rather and to the contrary they purchased the property which was pointed out to them on the ground by the agent of the defendants; that in purchasing the property they relied on the representations of defendants' agents as to the boundaries, which boundaries differ from those described on the map.

To hold, under such circumstances, that the parol evidence rule should prevent a showing of the facts would open the door to the worst sort of fraud in the sale of real property. Were such the rule, the seller could defraud the buyer by showing him some very desirable property and pointing out the specific corners and boundaries of the property supposedly to be sold, and then, by the simple expedient of later describing a parcel by lot and tract number with reference to a recorded map, which lot would be less in dimensions and size than the property shown, omit therefrom entirely the desirable portions of the property shown and pointed out.

The parol evidence rule was never intended to insure the success of a fraud—rather, it was to prevent a fraud.

In the case of *Stock* v. *Meek*, 35 Cal.2d 809 [221 P.2d 15], plaintiff brought the action to rescind the purchase from defendants of space in a cooperatively-owned apartment house and to recover the amount she had paid defendants therefor. Plaintiff had signed documents for the purchase of the space. At the trial for the rescission because of misrepresentation, the court excluded the plaintiff's testimony concerning conversations before she made the purchase of the space. Defendants contended that such evidence would tend to vary the terms of the written contract. The court said, among other things, the following (at p. 816):

"Extrinsic evidence to show mistake or fraud is admissible. Section 238 of the Restatement of Contracts states the general rule: 'agreements prior to or contemporaneous with an integration are admissible in evidence: (b) to prove facts rendering the agreement void or voidable for illegality, fraud, duress, mistake or insufficiency of consideration.' This court has approved the admission of extrinsic evidence to show a mistake of law by the grantor of a quitclaim deed, taken advantage of by the grantee. (*Jersey Farm Co.* v. *Atlanta Realty Co.*, 164 Cal. 412 [129 P. 593].) 'It is, of course, true that where an instrument is sought to be avoided for fraud or for mistake in law or in fact, evidence is admissible as to what the grantor intended to do or to convey.' (Citing cases.) Since the testimony by plaintiff should not have been excluded either as a variance or under the parol evidence rule, the trial court erred in its ruling. This error precluded plaintiff from presenting her case for recovery and requires reversal of the judgment for defendants in plaintiff's action for rescission."

The order is reversed.

White, P. J., and Doran, J., concurred.