[Civ. No. 6632.   Fourth Dist.   Feb. 7, 1962.]

E. S. HARPER, Plaintiff and Respondent, v. ALLEN
SILVER, Defendant and Appellant.

Alan G. Banks for Defendant and Appellant.

Gordon & Weinberg for Plaintiff and Respondent.

SHEPARD, J.—This is an appeal by defendant Allen Silver, from a judgment for damages in favor of plaintiff E. S. Harper, on account of alleged misrepresentation in the sale of a boat.

## FACTS

The facts shown by the record before us are substantially as follows: On May 2, 1958, Silver was the owner of a 40-foot, two-engine, twin-screw Chris Craft pleasure cruiser. On that date he executed a written contract to sell the boat to plaintiff, E. S. Harper. Richardson Yacht Anchorage, Inc., a corporation, and Ed Richardson, hereinafter called Brokers, were acting as Silver's agents in advertising and selling the boat. Prior to sale, Silver represented to Brokers and to Harper that the boat was equipped with twin 275-horsepower Chrysler marine motors. Harper, believing said representation to be true, bought the boat for the agreed price of $22,500. The boat was actually equipped with one 250-horsepower and one 275-horsepower engine. The cost, to Harper, of replacing the 250-horsepower engine with another 275-horsepower engine, which

was done a short time after Harper discovered that the engines were mismatched, was $2,270.44. Expert testimony was received showing that the difference in market value between the boat as represented and the boat as it actually was sold was measured by the cost of replacement of the smaller engine. The Brokers relied on the written listing from Silver, made no investigation of their own, and made the representations to Harper solely on the basis of the information given to them by Silver. Harper believed the representations of Silver, would not have bought the boat if he had not believed them, and consummated the purchase. Nonsuit was granted as to the Brokers and they were awarded judgment for $500 attorneys' fees against Silver. The judgment awarded Harper $2,229.56 damages against Silver. Silver appeals.

### MATERIAL MISREPRESENTATION

In his brief, Silver opens via the statement that he does not contend that the evidence might not be sufficient to support a finding of material representation as to engine horsepower. In view of the time-honored rule that on appeal "all conflicts must be resolved in favor of the questioned findings and all reasonable conflicts indulged in their support" (*Butler* v. *Nepple,* 54 Cal.2d 589, 597 [7] [6 Cal.Rptr. 767, 354 P.2d 239]), and that if there is a conflict in the evidence the determination of the weight of the evidence by the trial court is conclusive (*Luz* v. *Lopes,* 55 Cal.2d 54, 62 [8] [10 Cal.Rptr. 161, 358 P.2d 289]), we agree that the evidence is sufficient. However, Silver immediately after this opening statement contends that the evidence was insufficient to show what the horsepower of the engine was. With this contention we cannot agree.

It is true that some hearsay evidence as to Harper's investigation and discussion with certain marine engineers after the purchase, was offered by Harper and rejected by the court. However, Silver himself testified that he originally ordered 250-horsepower engines; that the bill of sale from the Chris Craft factory where he bought the boat showed 250-horsepower engines; that the Coast Guard certificate of registration showed 250-horsepower engines; that some time after he received delivery of the boat in 1957 he had trouble with one engine and had it replaced by another engine; that he had been informed that in 1956 Chrysler discontinued manufacturing the 250-horsepower engine and changed it to a 275-horsepower engine; that he had owned many boats before and had never known a Coast Guard certificate of registration to

be in error. Harper testified positively that the boat was sold to him on a clear representation that it was powered by matched 275-horsepower Chrysler marine engines; that at the time negotiations for purchase were occurring he noted that one engine's serial number did not correspond with that shown on the Coast Guard certificate and that in response to his inquiry on this to Silver, Silver assured him that both engines were, in fact, 275 horsepower and that the Coast Guard certificate was in error and would be corrected; that he, Harper, accepted and believed such assurance; that he would not have bought the boat had he known the truth; that on visual external sight of the motors in the boat a layman could not tell the difference; that he first discovered the engines were mismatched when he received the new Coast Guard certificate of registration a few weeks after the purchase, showing the same original serial numbers; that he then investigated and found that the port engine was a replacement turning up 300 revolutions per minute more at maximum throttle than the starboard engine, which was 250 horsepower; that he tested this with the tachometers on each engine and confirmed that fact thereby; that this affected the steering, caused a roll in the boat and difficulty in synchronizing the motor speeds; that he telephoned this information to the Brokers; and that they admitted one motor was 250 horsepower. The objection to this answer came too late and the answer remained in evidence subject to Silver's motion to strike but such motion was never made. On cross-examination Harper again testified there was a difference in the engine horsepower. An expert on marine engines testified that he examined the engines and gave Harper an "estimate allowing for the difference in price between *the 250 horsepower* engine and 275 horsepower engine." (Italics ours.) Nowhere in the communications between Silver and Harper and the Brokers after Harper gave the Brokers the first telephoned information of the fact of mismatched engines does there appear any suggestion from Silver that Harper's statements were incorrect. Neither Silver nor the Brokers offered any contrary evidence on the matter. We are satisfied that the evidence was sufficient to support the court's finding that the port engine was 275 horsepower and the starboard engine was 250 horsepower.

### Seller's Belief

Next, Silver contends that he had reasonable grounds to believe the representations he made. Civil Code section

1572, paragraphs 1 and 2, provide that actual fraud may consist of

"1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

"2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true."

In the case here at bar, every bit of written information Silver had, including his original order for the boat, his bill of sale from the builders and the Coast Guard certificate of registration, all showed twin 250-horsepower engines. He knew that he had replaced one engine after the time the engine manufacturers discontinued making the 250-horsepower engine. He defends on the ground that he was informed by an engine agent in a casual conversation that both engines would probably be 275 horsepower. That agent was never produced for testimony nor was the mechanic who changed the engine. There is no suggestion that their testimony was not available.

In view of the sum total of the written information which had admittedly been received by Silver, the trial court was not compelled to believe Silver's statement that he did not know at least one of the engines was 250 horsepower. There was sufficient evidence to support the court's finding that Silver's representation was false and was made "in a manner not warranted by the information available to him," even though he believed it to be true. ▮ As was said in *Wishnick* v. *Frye*, 111 Cal.App.2d 926, 930 [2] [245 P.2d 532], which is cited by Silver,

"In order to satisfy the requirement of scienter, it may be established either that defendant had actual knowledge of the untruth of his statements, or that he lacked an honest belief in their truth, or that the statements were carelessly and recklessly made, in a manner not warranted by the information available to defendant."

See also *Richard* v. *Baker*, 141 Cal.App.2d 857, 863 [6] [297 P.2d 674]; *Stowe* v. *Fritzie Hotels, Inc.*, 44 Cal.2d 416, 422, 423 [12-13] [282 P.2d 890]; *Ashburn* v. *Miller*, 161 Cal. App.2d 71, 80-81 [326 P.2d 229]; *Gagne* v. *Bertran*, 43 Cal.2d 481, 487 [5] [275 P.2d 15]; *Clar* v. *Board of Trade*, 164 Cal. App.2d 636, 644 [1-2] [331 P.2d 89].

### Intent to Induce Reliance

▮ Next, Silver argues that the evidence did not show any intent by him that the representation would induce Harper to buy. With this we cannot agree. Silver's original

representation and his repeated assurances to Harper that the engines were in truth 275 horsepower were all positive statements. Under the circumstances here presented the court was fully warranted in inferring that the representations were made with an intent to induce Harper to make the purchase. (*Gagne* v. *Bertran, supra,* p. 488 [6]; *Ashburn* v. *Miller, supra,* p. 86 [14].)

### RELIANCE ON REPRESENTATIONS

Silver next contends that the evidence showed that Harper could not reasonably have believed Silver's representations. While Harper did notice the discrepancy in serial numbers, he asked Silver about it and was reassured by Silver that both motors were 275 horsepower. There is some conflict about how much of the background Harper was told. Harper had a casual conversation with some one in the shop which replaced the engine for Silver but there is no evidence that this was an investigation by Harper nor that Harper asked the person what the horsepower of the replacement was nor that the person he talked to knew what the horsepower was. Harper was entitled to rely on the positive assertions of Silver. (*Richard* v. *Baker, supra,* p. 861 [5]; *Ferguson* v. *Koch,* 204 Cal. 342, 346 [3] [268 P. 342, 58 A.L.R. 1176]; *Pohl* v. *Mills,* 218 Cal. 641, 652 [24 P.2d 476]; *Goldner* v. *Jaffe,* 171 Cal. App.2d 751, 755 [7] [341 P.2d 354]; *Blackman* v. *Howes,* 82 Cal.App.2d 275, 279 [2-5] [185 P.2d 1019, 174 A.L.R. 1004]; *Garrett* v. *Perry,* 53 Cal.2d 178, 181 [2] [346 P.2d 758].)

Silver further argues that Harper hired his own independent expert to examine the boat. This expert, Captain Wakeland, testified without contradiction that he was employed solely to examine the hull and design of the boat itself and the presence of such fixtures as he could see; that he was not employed to and was not competent to examine the engines. No contrary evidence was offered and there is no evidence that Harper ever intended any engine investigation by Wakeland. There is no merit in this contention. Harper directly testified that he believed Silver's assurances on horsepower.

### DAMAGE

Silver next contends the evidence of damage was insufficient. Expert witnesses with knowledge of the boat and experience in boat sales and market value conditions testified that the difference in value, i.e., what the boat would sell for

with mismatched engines as compared to one with matching engines, would be measured by the cost of replacing the smaller engine, and that the boat with mismatched engines was worth and would sell for less than one with matched engines by that amount. An expert in marine engines who actually made the replacement of the engine for Harper gave that cost at $2,270.44. There is no contrary evidence. This figure is more than the award of $2,229.56. This discrepancy may possibly be explained by one of the exhibits received in evidence. The parties did not see fit to have the exhibits forwarded to this court. See Rules on Appeal, rule 10 (b). However, Silver received the benefit of the discrepancy and he cannot complain. The evidence as received fulfilled the essential requirements of the "out of pocket loss" rule. (*Garrett* v. *Perry, supra,* 53 Cal.2d 178, 184 [7]; *Clar* v. *Board of Trade,* 164 Cal.App.2d 636, 648 [331 P.2d 89]; *Bagdasarian* v. *Gragnon,* 31 Cal.2d 744, 752 [6] [192 P.2d 935]; *Prince* v. *Harting,* 177 Cal.App.2d 720, 729 [7a] [2 Cal.Rptr. 545].)

## CONTRACT TERMS

■ Silver next makes a contention apparently based on one of the exhibits. As hereinbefore noted, the exhibits are not before us. The evidence shows the offer to purchase was made about the second of May and the sale completed and delivery taken on May 9, 1958. This was long before discovery by Harper of the true facts. Under rule 52, Rules on Appeal, it must be presumed that the record contains all material necessary to a determination of the points raised on appeal. (*West Covina Enterprises, Inc.* v. *Chalmers,* 49 Cal.2d 754, 758 [2] [322 P.2d 13].)

No one has appeared in this appeal on behalf of Brokers and no complaint is made by either appearing party regarding the attorneys' fee award to Brokers.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.