[Civ. No. 19545.   Second Dist., Div. One.   Mar. 16, 1954.]

H. D. HOVER, Respondent, v. EGHICHE HAROUT
et al., Appellants.

Robbins & Loeb, Samuel D. Robbins, Keatinge, Arnold &
Zack, David J. Sachs and George L. Arnold for Appellants.

Parker, Stanbury, Reese & McGee and A. P. G. Steffes
for Respondent.

DORAN, J.—The complaint herein sought damages for
fraud in reference to various false statements and representa-
tions made to induce the plaintiff to enter into certain written
agreements relating to the production of stage plays to be
presented at Harout's Ivar Theatre in Hollywood.   There
was a cross-complaint by appellants Harout for breach of
contract; likewise, a cross-complaint by appellant Engel for
breach of a contract whereby Engel was employed as manager
of the Ivar Theatre.   A jury found in favor of the plaintiff
in the sum of $26,927.46, and against cross-complainants
Harout and Engel, whose appeals were thereafter consolidated
by stipulation.

On January 12, 1950, appellants Harout, husband and wife,
leased from the Cosmo-Capital Corporation, owner, an entire
building in which are located the Har-Omar Restaurant oper-
ated by appellants personally, and the Ivar Theatre involved
herein.   The Harouts then sublet the theatre to Actors Album
at a weekly rental of $600, the latter taking possession on

February 4, 1951. Of this rental, appellant Engel, a real estate broker, received a 10 per cent commission under written contract with Harout, dated May 15, 1950.

The record discloses evidence to the effect that plaintiff Hover had known Engel for many years as a theatre man, but did not know that Engel was a real estate broker acting for the Harouts. Engel first approached Hover on April 12, 1951, in reference to the production of stage plays at the Ivar Theatre, saying: "If you will let me work it out for you, put me in as your general manager for $200.00 a week . . . maybe we can get a smaller rent from Harout, and get Kennedy (the stage director) to take a little less; but, you come down and look at the theatre." Hover was and is the owner of Ciro's Restaurant in Hollywood.

There is evidence that Engel represented to Hover that Actors Album was making a profit of $2,000 a week or more, that the lease was about to expire, that difficulty existed between the members of Actors Album, and that there was an opportunity for Hover to get the lease. Engel also stated that "This place is beautifully air-conditioned. The man put in $30,000.00 for equipment and most of it went for air-conditioning"; also that "They are selling out about every night." That evening Hover attended the show, after which Engel took respondent to Harout's restaurant in the same building, where the three had a conversation in a booth. Harout remarked that "We have been doing this business every night." When Hover attended the performance, "it looked like a full house." Harout told Hover the same story of trouble between the Actors Album partners that Engel had previously mentioned.

A financial statement was finally given to Hover which purported to show a gross income of Actors Album that week, of $5,977.25, with current operating expenses of $4,326.18. When Hover remarked that this showed a profit of only $1,650 instead of the represented $2,000 profit, Harout then claimed that the expenses included $200 per week withdrawals by Adams and Austin which plaintiff would not have, and that "The thousand dollars newspaper advertising is high"; and concluded, "so that brings it up to about $2,000.00."

On April 25, 1951, relying on appellants' representations, Hover leased the Ivar Theatre for a period of 26 weeks commencing June 3, 1951, at a rental of $600 per week, plus 10 per cent of the net profits. Hover also hired the defendant Kennedy as stage director at a salary of $200 per week,

plus 4 per cent of the gross box office receipts less admission tax, and 10 per cent of the net receipts. Engel, the real estate broker who had interested Hover in the deal, was employed as manager for $200 per week, plus 10 per cent of the net profits. The above mentioned agreements were all in writing.

Beginning with June 4, 1951, Hover operated the theatre, producing various stage plays until August 25, 1951, which operation resulted in a loss of $26,927.46—the amount of judgment Hover recovered in this action. As hereinbefore mentioned, the jury denied recovery on cross-complainants' claim of breach of contract. One of appellants' complaints is that no allowance was made for rent which Hover was obligated to pay under the lease.

In addition to appellants' contention that the evidence is insufficient to support the judgment, and that the damages are excessive, it is argued the representations in question were not relied upon by plaintiff, and that "The plaintiff, at the time of his discovery of the falsity of the representations as to past profits, could have been fully compensated for all damages proximately caused by the fraud, through exercising his remedy of rescission; his continued performance with knowledge of the fraud caused or contributed to the damages . . .; and under such circumstances the law will not permit the plaintiff to recover or to have an allowance for damages." Complaint is also made that "instructions given were prejudicial and contained incorrect statements of law."

Concerning appellants' contentions in reference to alleged insufficiency of the evidence, this situation is governed by the well established rule that an appellate tribunal must refuse to enter into a consideration of the weight and credibility of evidence where the record discloses substantial evidence in support of the verdict and judgment. That the record of testimony received by the trial court in the instant case does reveal substantial evidence supporting respondent's claim of fraud, cannot be doubted. The fact that the evidence in respect to various matters appears to be in conflict, or that possibly some other court or jury might have arrived at a different conclusion, in no way affects the application of this well known principle. And, as said in *Berniker* v. *Berniker*, 30 Cal.2d 439, 444 [182 P.2d 557], and elsewhere: "an appellate court will view the evidence in the light most favorable to the respondent," and will "indulge all intendments and reasonable inferences which favor sustaining the finding of the trier of fact."

The other points raised in appellants' briefs are likewise untenable. The complaint stated a cause of action based upon appellants' fraudulent representations resulting in the respondent's damage. Denying these allegations, appellants cross-complained for breach of contract. The case was tried on the theory that if respondent should recover under the complaint, then no recovery could be had under appellants' cross-complaints. The voluminous record indicates that the parties were accorded full opportunity to go into all these matters in extenso, and the matter was fully and fairly submitted to a jury which found against the appellants' contentions.

Appellants' argument that "The evidence affirmatively shows that the representations alleged were not relied upon nor regarded as material by the Plaintiff," is not borne out by the record. Whatever conflict existed merely raised the ordinary question of fact, and involves matters of weight and credibility of evidence which, as previously mentioned, are not now open for appellate consideration. The jury had before it all the various items of evidence relating to such matters and must be deemed to have given adequate consideration thereto.

Another point put forth by appellants is that Hover, after learning of the fraud, continued to operate the theatre, and that "his continued performance with knowledge of the fraud caused or contributed to the damages." However, as noted in respondent's brief, the record affords no evidence "that after he became suspicious . . . respondent could have solved his difficulties by the simple process of informing appellants that he was ceasing operations."

There is evidence that two weeks after the theatre opened, appellants were asked to reduce payments and salary called for by lease and agreement, and refused to do so; that respondent then carried on until August 25, 1951, the date of the closing of the current play. At that time "respondent realized that to continue on would merely increase his damages"; and sought to "minimize his damages by stopping further operations." In respect to this conduct, appellants appear to have no cause for complaint. The right of action for fraud had then crystallized and there is nothing to indicate any waiver on the part of the respondent. As hereinbefore indicated, a reviewing tribunal must "indulge all intendments and reasonable inferences which favor sustaining

the finding of the trier of facts.'' Appellants' argument would compel the consideration of inferences unfavorable to the verdict rendered.

■ Nor does the record indicate any reason to believe that the damages awarded were excessive. There was testimony that Hover's income from theatre admissions during the period in question was $30,280.03, and that the total costs and expenses incurred amounted to $57,207.49. The jury's award was the difference between these two sums.

A review of the instructions given to the jury by the trial court, several of which were jointly requested by the parties, leads to the conclusion that the case was fairly submitted to the jury, and that no prejudice could have resulted in respect to appellants' fundamental rights. No grounds for reversal have been made manifest.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied April 5, 1954, and appellants' petition for a hearing by the Supreme Court was denied May 6, 1954.