[Civ. No. 22791. Second Dist., Div. One. Apr. 18, 1958.]

N. J. K. CORPORATION (a Corporation), Respondent, v. PACIFIC VITAL FOODS STORES, INC. (a Corporation) et al., Appellants.

Conroy & Conroy, Edward L. Conroy and William U. Handy for Appellants.

Irmas & Rutter for Respondent.

DRAPEAU, J.†—The N. J. K. Corporation, of which Mr. and Mrs. Nathan Jack Smith are the sole stockholders, filed the present complaint asking rescission of a contract of sale of a retail health food store purchased from appellants, and damages for fraud. After trial before a judge, respondent corporation recovered judgment in the sum of $10,956.25, and the cancellation of a $3,000 promissory note given to appellants as part of the purchase price.

It is appellants' contention that the evidence does not support the findings; that the true measure of damages is not the loss alleged to have been suffered; that respondent was not damaged in the amount of the judgment by reason of the alleged fraud, and was not entitled to a cancellation of the $3,000 note; and that the appellants' motion for a nonsuit should have been granted.

The record discloses that when Mr. and Mrs. Smith first inquired about the health food store, appellant Kordell, vice president of Pacific Vital Food Stores, Inc., represented that the store business grossed approximately $57,000 during 1953, whereas it appeared from the appellants' books that the entire gross sales of Pacific Vital Food Stores, Inc., which was engaged in both wholesale distribution of health foods and

†Assigned by Chairman of Judicial Council.

the operation of retail stores, was only $56,496.07, which amount included mail sales as well as sales from the store in question. The exact amount of such mail sales was not established.

Appellants also represented to respondents that the store business made an "operator's profit (before wages) of $15,-392.00" during the calendar year of 1953, and that with an allowance of $2,400 for wages, the "owner-operator's profit or earnings" was $13,273. The books of appellant corporation, however, show that the appellants lost $8,634.19 during the fiscal year ending August 31, 1953, and during the fiscal year ending August 31, 1954, appellant corporation lost $2,852.42. Appellants' auditor was unable to determine from the books what percentage of this loss was attributable to the Broadway store. Mr. Kordell, appellant corporation's vice president, who might have produced explanatory record, did not appear or testify at the trial, and his counsel was uncertain as to Kordell's whereabouts. There was also evidence to the effect that although in the sale agreement appellant represented that they were transferring at least $7,500 worth of "salable quality" merchandise, much of which was in sealed containers, respondent found that "A good deal of it was in very poor condition. In fact, we had to discard quite a few things," such as "crackers and different kinds of nuts and fruits, and . . . almost one entire counter full of things that were bad, and the macaronis and things like that that were made out of flour, they were wormy and spoiled."

Appellants concede that it was represented to respondent that the store was held under a lease rental of $400 per month, whereas appellants were only paying a rental of $350 per month. This statement was said to have been made "in good faith and inadvertence," and it is argued that since respondent obtained a $400 lease on the store, such statement cannot be deemed actionable fraud. Appellant Kordell represented that he would not compete with respondent in the "retail health food store business" within a three mile radius for a period of five years, and the Pacific Vital Food Stores, Inc., likewise agreed to "refrain from engaging in the retail health food business" in the same area and period. There was evidence, however, that on November 2-11, 1954, appellants conducted a series of free lectures within the three mile radius, and sold the same line of merchandise as that carried by respondent, at prices far below retail prices and in some cases even below the wholesale prices.

In view of substantial evidence concerning appellants' conduct in reference to such representations, it cannot be said that the findings of the trial court in respect to misrepresentation, knowledge of falsity, intent to defraud, and reliance by the respondent, do not find support in the record. Such being the case, the situation is governed by the well established rule that a reviewing court will not attempt a revaluation of the evidence but will accept the decision of the trial court as to all matters of sufficiency and credibility. Appellants' explanations and contentions in reference to these matters are not persuasive. Defendants' motion for a nonsuit was properly denied.

The argument advanced in appellants' briefs that "Respondent was not damaged in the sum of $10,956.25 . . . and was not entitled to cancellation of the note for $3,000.00," is likewise without merit. In this connection, appellants claim that since respondent elected to abandon its action for rescission at the trial in favor of the theory of fraud, the note could only be "cancelled as an offset to some specific damage, otherwise suffered," and that the findings in respect to damages are not supported by the evidence.

The trial court found that the plaintiff lost the sum of $10,956.25 "in the operation of this business. That of this sum, . . . ($2,200.00) was paid by Mr. and Mrs. Nathan Smith on behalf of the plaintiff to the landlord of the premises leased by the plaintiff to secure a cancellation of the then existing lease, and that this sum is owed by the corporation to Mr. and Mrs. Smith. That further, from that sum, three thousand dollars ($3000.00) is owed by the plaintiff to Mrs. Smith as salary for services rendered to the corporation."

*Hover* v. *Harout* (1954), 123 Cal.App.2d 860 [267 P.2d 823], concerning the items of damage awarded for fraud, has been the subject of comment by both parties. In that case plaintiff was seeking to recover damages alleged to have resulted from false statements on which plaintiff relied in leasing a theatre from defendants and producing a show therein. An award of the difference between cost of operation and income from admissions was held not excessive. In the present litigation, recovery was allowed, as heretofore indicated, for the actual, out-of-pocket losses sustained by plaintiff in operation of the business. Appellants' attempt to distinguish the Hover case from the instant situation by reason of the fact that the Hover case did not involve a purchase and sale but the lease of a theatre, is not compelling.

The principle applied in the Hover case is clearly applicable to the case at bar.

Section 3343 of the Civil Code provides that "One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, *together with any additional damage arising from the particular transaction.*" (Italics added.) The award in the present case was the trial court's decision, based upon the evidence, as to plaintiff's actual loss. It cannot be said that such finding is not supported by substantial evidence.

There was evidence, for example, that Mr. Smith had worked at the store full time throughout the entire period of operation, and that Mrs. Smith had worked full time from March to December, and had kept the books in addition to helping run the store, all without compensation. Mr. Smith's services certainly equalled the amount of the $3,000 note. Likewise, the item of $2,200 paid to secure a cancellation of the lease, cannot be deemed an improper item of damage. Appellants' argument that the court used the old "benefit of the bargain" rule rather than that specified in Civil Code, section 3343, is untenable.

The judgment is affirmed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied May 13, 1958, and appellants' petition for a hearing by the Supreme Court was denied June 17, 1958.