[L. A. No. 24986. In Bank. Dec. 3, 1959.]

PAUL GARRETT, Respondent, v. WILL H. PERRY, Appellant.

Lawrence M. Cahill, O'Melveny & Myers and Sidney H. Wall for Appellant.

Charles Lederer, Lee Perkal and Andrew J. Weisz for Respondent.

GIBSON, C. J.—Plaintiff recovered a judgment for damages in the amount of $200,400 for fraud in inducing him to buy a ranch, and defendant appeals.

The ranch, located in Modoc County, consisted of three separate parcels and had been owned by defendant and his wife since 1930. In 1951 plaintiff bought the property for $700,000, of which $100,000 was in cash and $600,000 in plaintiff's notes payable in installments and secured by three deeds of trust, one on each of the parcels.

Prior to the sale defendant represented to plaintiff that cattle could be kept on the ranch without winter feeding, that in 1950, when 2,000 acres of the property had been planted in barley, the gross income was $120,000, and that the ranch would sufficiently accommodate in excess of 5,000 head of cattle the year around without the necessity of winter feeding. Plaintiff made some inquiries from persons living nearby and reported to defendant what he had heard, some of which was unfavorable to the property. Defendant replied that he had been on the ranch for 20 years and knew all of its qualities, that no one else had sufficient knowledge or experience to give any real or valid opinion of its capacity, and that information which differed from defendant's representations would not be true. Plaintiff, who was inexperienced in cattle ranching and unfamiliar with the weather conditions in Modoc County, told defendant that for these reasons he had to rely upon defendant's representations concerning the ranch. Defendant de-

clared that he was giving plaintiff an "honest and square deal" and again reiterated his representations.

Plaintiff, relying on these representations, entered into an agreement to purchase the ranch, made the cash payment of $100,000, received title to the property, and subsequently made payments totaling $59,000 on the notes he had given for the balance. He entered upon the land and diligently followed the ranching methods and practices suggested by defendant, but he was unable to operate the ranch profitably and suffered a substantial crop and cattle loss. Plaintiff learned that the ranch had never had a carrying capacity of more than 1,500 head of cattle, that the crop land was in constant danger of flooding and freezing, and that the representations made by defendant were false. As a result of plaintiff's inability to operate the ranch profitably, he became delinquent in the installments due on the notes, the deeds of trust were foreclosed, and the title was revested in the vendors.

The court found and concluded that the representations which defendant made were false, were known by him to be untrue, and were made in order to induce plaintiff to buy the property, that plaintiff acted reasonably in entering into the transaction in reliance upon them, and that plaintiff's inability to operate the ranch profitably resulted from their falsity. The court determined that the ranch property had a reasonable market value of $530,000 when plaintiff received title to it under the sales contract and that the difference between the value of the ranch at that time and the purchase price of $700,-000 paid by plaintiff was $170,000. To this sum the court added $30,400 expended by plaintiff for the operation, care, and improvement of the property and concluded that plaintiff was damaged in the sum of $200,400, the amount of the judgment.

It is not disputed that the evidence supports the finding that the representations were false, but defendant argues that plaintiff did not act reasonably in relying upon the false representations. ■ The fact that a buyer makes an independent investigation does not preclude him from relying on representations made by the seller where, as here, the seller has a superior knowledge. (*Bagdasarian* v. *Gragnon*, 31 Cal.2d 744, 748 [192 P.2d 935].) Nor did the receipt of some unfavorable information preclude plaintiff from such reliance as a matter of law. (*Bagdasarian* v. *Gragnon*, 31 Cal.2d 744, 749 [192 P.2d 935].) ■ The trial court could properly conclude that any suspicions of plaintiff arising from the information he had obtained upon his investigations were allayed by defendant's

subsequent reassurances and that under the circumstances of this case plaintiff was not precluded from relying upon what defendant told him.

Defendant contends that plaintiff is not in a position to maintain this action for damages because the deeds of trust have been foreclosed and because he has no further obligation on the notes in view of section 580b of the Code of Civil Procedure, which prohibits a deficiency judgment after foreclosure of a purchase money deed of trust.* Defendant's theory is that the bringing of an action for damages implies an election by plaintiff to affirm the contract and that plaintiff cannot recover damages unless he has either paid the full consideration called for by the contract or is willing and able to pay it, less whatever damages is assessed for the fraud, whereas here plaintiff has not paid and has no obligation to pay the remainder of the consideration.

The right of action for damages for fraud with respect to a contract for sale of real estate arises immediately on the consummation of the fraud and may be asserted at once upon discovery, whether the contract is executed or executory. (*Paolini* v. *Sulprizio,* 201 Cal. 683, 685-686 [258 P. 380].) In the Paolini case, where the defrauded buyer was in default, the court pointed out that such an action is not on the contract but is a collateral action sounding in tort and held that performance of the contract by the defrauded party is not a condition to maintaining his action for deceit. (201 Cal. at p. 686.) It was further stated that by instituting the action the defrauded party affirms the contract without waiving the right to damages for fraud, that he need not allege and prove his willingness and ability to perform the terms of the contract, and that he may withhold payment to recoup his damages. (201 Cal. at pp. 686-687.)

The holding of the Paolini case, 201 Cal. 683, that a buyer in default may nevertheless recover damages for fraud represents the generally accepted law. (See 5 Williston on Contracts (rev. ed. 1937) 4276; note, 13 A.L.R.2d 1248.) Damages for fraud have also been allowed in cases where the defrauded buyer lost the property through foreclosure by a creditor other than the seller. (*Eatwell* v. *Beck,* 41 Cal.2d 128, 131 [257 P.2d 643]; *Feckenscher* v. *Gamble,* 12 Cal.2d 482,

---

*Although the findings do not show that a deficiency existed with respect to plaintiff's notes after the foreclosures took place, defendant's argument assumes there may have been a deficiency and plaintiff does not dispute the matter.

491 [85 P.2d 885].) Similarly, the defrauded buyer should not be deprived of his cause of action for damages where, as here, he lost the property through foreclosure by the fraudulent seller. *Dunphy* v. *Guaranty Bldg. etc. Assn.*, 11 Cal.App.2d 419, 422-423 [53 P.2d 1036], is disapproved insofar as it is inconsistent with the views expressed herein.

Defendant relies on the cases of *Olson* v. *Northern Pac. Ry. Co.*, 126 Minn. 229 [148 N.W. 67], and *West* v. *Walker*, 181 Minn. 169 [231 N.W. 826, 74 A.L.R. 165], which held that a purchaser of real property who defaulted in the performance of his executory contract could not maintain an action for damages for fraud after the seller, under a special statutory procedure, canceled the contract on the ground of the default. These cases have been criticized by writers on the subject. (5 Williston on Contracts (rev. ed. 1937), § 1524, p. 4268, fn. 5; note (1930) 30 Columb.L.Rev. 1205; note (1930) 5 Tulane L. Rev. 145; note (1930) 6 Wis.L.Rev. 37; note 74 A.L.R. 169, 173.) Moreover, they appear to be in conflict with *Townsend* v. *Jahr*, 147 Minn. 30 [179 N.W. 486], which allowed recovery of damages for fraud where the defrauded purchaser had given notes and a purchase money mortgage as part payment of the purchase price of realty and the notes were discharged by a foreclosure in which the seller recovered the property.

It is next contended that the trial court did not properly calculate the damages either as to the allowance of $170,000, representing the difference between the value of the property and the purchase price, or the additional amount of $30,400 covering the expenditures for the operation, care, and improvement of the property. Section 3343 of the Civil Code, which sets forth the measure of damages in fraud cases, provides in part: "One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction." This section established in California the out-of-pocket-loss rule. (*Bagdasarian* v. *Gragnon*, 31 Cal.2d 744, 759 et seq. [192 P.2d 935].)

 In arriving at the figure of $170,000 as the difference between what plaintiff parted with and what he received, the trial court assessed damages solely on the basis of the circumstances existing at the time the contract was made (receipt by plaintiff of title to a ranch worth $530,000 and his payment of $700,000, consisting of $100,000 in cash and $600,000 in the

form of his notes). It is thus apparent that the court did not consider the events which subsequently took place, namely, the payments by plaintiff of $59,000 on the notes, the foreclosures which resulted in returning the ranch to defendant, and the consequent termination of plaintiff's obligation to make further payments on the notes by operation of section 580b of the Code of Civil Procedure, which prohibits deficiency judgments after foreclosure of purchase money deeds of trust. These subsequent events operated to return to defendant all the consideration which he furnished under the sales contract and to restore to plaintiff a large portion of the consideration furnished by him. When all of the facts are considered it is obvious that, aside from plaintiff's expenditures for operation, care, and improvement of the ranch, the total amount which he parted with consisted of $159,000 ($100,000 initial payment plus $59,000 paid on notes), or $11,000 less than the sum of $170,000 awarded to him by the court, and that he retained nothing in exchange.

The unqualified language of section 3343 indicates that the plaintiff should receive as damages the difference in value between everything with which he parted and everything he received, and the statute contains nothing to show that the difference must be calculated solely on the basis of the facts existing at the time the contract was made or performed. The section must be applied realistically so as to give the defrauded person his actual out-of-pocket loss, and, where necessary to reach that result, the court must consider subsequent circumstances. This principle was followed in *Feckenscher* v. *Gamble,* *supra,* 12 Cal.2d 482, 500, where, because of false representations, a buyer of real property was unable to meet the payments due upon an encumbrance she had assumed and lost the property by foreclosure. The court held that these subsequent circumstances required the disregarding of both the value of the property and the contract price in calculating damages, that she must be treated as having received nothing, and that she was entitled to recover the value of the consideration she had given.

In *Townsend* v. *Jahr, supra,* 147 Minn. 30 [179 N.W. 486], on the basis of facts similar to those involved here, the trial court awarded plaintiffs the difference between the contract price and the actual value of the land, and the reviewing court, in reversing the judgment, held that since the purchase price had not been paid and the obligation to pay had been discharged, the purchase price was not controlling and the recov-

ery should be limited to the consideration the plaintiffs had actually given.

The necessity of considering the results of the foreclosure as relevant supervening circumstances can be demonstrated by examining the effect of a failure to do so when the figures are changed. Suppose that the buyer in this case had defaulted after making the payment of $100,000 but without paying anything on the notes, and that the seller then recovered the land by foreclosure. If the result of the foreclosure were not considered, the buyer would likewise recover $170,000 as the difference between the $700,000 he gave in money and notes and the value of the land which was $530,000. Since the buyer had made only the payment of $100,000 he would receive a windfall of $70,000. Here plaintiff paid a total of $159,000 before the foreclosure, and his windfall, under the judgment of the trial court, would be $11,000. If he had paid a total of $170,000 there would have been no windfall at all. Thus under plaintiff's theory the earlier the buyer defaulted and the less he paid before foreclosure, the larger his windfall would be. Such a result should not be permitted. (*Cf. Hines* v. *Brode,* 168 Cal. 507, 513 [143 P. 729].)

*Hancock* v. *Williams,* 99 Cal.App.2d 80 [221 P.2d 129], on which plaintiff relies, is distinguishable. There the defrauded buyer had assumed an outstanding deed of trust as a part of the purchase price of real property, and he subsequently obtained a discount of $3,500 upon paying the indebtedness. The court allowed the buyer the difference between the purchase price and the value of the property, and it refused to deduct from that difference the amount of the discount, stating that damages are to be assessed as of the date of the fraudulent transaction and that the consideration paid by the buyer was not changed by the obtaining of the discount. The distinction is that the advantage obtained by the buyer in the Hancock case was the result of a wholly independent bargain made by the buyer with a third party, to the benefit of which the seller was not entitled, whereas in the present case the supervening circumstances followed directly from the original contract. The statement in the Hancock case (99 Cal. App.2d at p. 82) that damages are to be assessed as of the date of the fraudulent transaction is too broad insofar as it means that the court can not consider subsequent factors which affect the amount of the actual loss, and the cases cited for it do not support such a rule. Two of those cases, *Garstang* v. *Skinner,* 165 Cal. 721, 726 [134 P. 329], and *Carter* v. *Turner,* 90 Cal.App. 193, 200 [265 P.

870], state that the *values* of the property involved are to be taken as of the time of the fraudulent transaction, adding that this applies "where there are no supervening circumstances which render the values at some other time material to the injury arising from the fraud." The fact that values must ordinarily be considered as of the time of the fraudulent transaction does not mean that the court cannot consider circumstances other than value which operate to increase or reduce the injury.

Defendant's attack upon the allowance of $30,400 for consequential damages is based on the theory that the findings do not support the award because, he asserts, they show that the award includes compensation for expenditures not proximately caused by the fraud, within the meaning of the provision in section 3343 of the Civil Code allowing recovery of additional damage arising from the transaction. It is generally recognized, under both the benefit-of-the-bargain and the out-of-pocket-loss rules, that when, as a result of the fraud, the person defrauded has made expenditures which were reasonable under the circumstances, these may ordinarily be recovered, insofar as they have been lost or rendered fruitless because of the deceit. (See McCormick on Damages (1935) 458-459; Rest., Torts, § 549, Comment d, illus. 1-3; Prosser on Torts (2d ed. 1955) 570; 37 C.J.S. 468-469.) In accordance with this principle courts in California have awarded consequential damages for losses suffered in the operation of a business. (*N. J. K. Corp.* v. *Pacific Vital Foods Stores,* 159 Cal. App.2d 522, 525-526 [324 P.2d 96]; *Lawson* v. *Town & Country Shops, Inc.,* 159 Cal.App.2d 196, 204-205 [323 P.2d 843]; *Hover* v. *Harout,* 123 Cal.App.2d 860, 864 [267 P.2d 823].)

 The court found that because of the falsity of the representations plaintiff was unable to operate the ranch in a profitable and expedient manner and suffered a great crop and cattle loss which caused him to become delinquent in his payments on the purchase price. The court further found that plaintiff, induced by the fraudulent representations, made expenditures for the operation, care, and improvement of the ranch and that expenditures for these purposes in the amount of $30,400 were totally lost to plaintiff. While the findings are not entirely clear, it appears that, when they are construed as a whole in support of the judgment, the amount of $30,400 was intended to include only such expenditures as were wholly lost to plaintiff as a result of the fraud and were not offset by any income. It follows that the award of this amount as con-

sequential damages was proper under the general rule stated above.

The judgment is modified by reducing the amount allowed as damages to $189,400, and, as so modified, it is affirmed.

Traynor, J., Schauer, J., Spence, J., McComb, J., Peters, J., and White, J., concurred.